# TOWN OF HALLIE ET AL. v. CITY OF EAU CLAIRE

No. 82–1832.   Argued November 26, 1984—Decided March 27, 1985

POWELL, J., delivered the opinion for a unanimous Court.

*John J. Covelli* argued the cause for petitioners. With him on the briefs was *Michael P. May.*

*Frederick W. Fischer* argued the cause and filed a brief for respondent.*

*Ronald A. Zumbrun* and *Robert K. Best* filed a brief for the Pacific Legal Foundation as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the United States by *Solicitor General Lee, Assistant Attorney General McGrath, Deputy Solicitor General Wallace, Deputy Assistant Attorney General Rule, Carter G. Phillips, Catherine G. O'Sullivan,* and *Nancy C. Garrison;* for the State of Illinois et al. by *Neil F. Hartigan,* Attorney General of Illinois, *Robert E. Davy, Thomas J. DeMay, Linley E. Pearson,* Attorney General of Indiana, *Frank A. Baldwin,* Deputy Attorney General, *Bronson C. La Follette,* Attorney General of Wisconsin, and *Michael L. Zaleski,* Assistant Attorney General; for the Commonwealth of Virginia et al. by *Gerald L. Baliles,* Attorney General of Virginia, *Elizabeth B. Lacy,* Deputy Attorney General, *Craig Thomas Merritt,* Assistant Attorney General, *Joseph I. Lieberman,* Attorney General of Connecticut, *Robert M. Langer,* Assistant

JUSTICE POWELL delivered the opinion of the Court.

This case presents the question whether a municipality's anticompetitive activities are protected by the state action exemption to the federal antitrust laws established by *Parker* v. *Brown*, 317 U. S. 341 (1943), when the activities are authorized, but not compelled, by the State, and the State does not actively supervise the anticompetitive conduct.

I

Petitioners—Town of Hallie, Town of Seymour, Town of Union, and Town of Washington (the Towns)—are four Wisconsin unincorporated townships located adjacent to respondent, the City of Eau Claire (the City). Town of Hallie is located in Chippewa County, and the other three towns are located in Eau Claire County.[1] The Towns filed suit against the City in United States District Court for the Western District of Wisconsin seeking injunctive relief and alleging that the City violated the Sherman Act, 15 U. S. C. § 1 *et seq.*, by acquiring a monopoly over the provision of sewage treatment services in Eau Claire and Chippewa Counties, and by tying

Attorney General, *Hubert H. Humphrey III*, Attorney General of Minnesota, *Stephen P. Kilgriff*, Assistant Attorney General, *LeRoy S. Zimmerman*, Attorney General of Pennsylvania, *Eugene F. Waye*, Deputy Attorney General, *Brian McKay*, Attorney General of Nevada, *David L. Wilkenson*, Attorney General of Utah, and *Suzanne M. Dallimore*, Assistant Attorney General; for the U. S. Conference of Mayors et al. by *Stephen Chapple, Frederic Lee Ruck*, and *Ross D. Davis;* for the American Public Power Association et al. by *Carlos C. Smith, Frederick L. Hitchcock, Edward D. Meyer, Stanley P. Hebert, John W. Pestle, John D. Maddox, June W. Wiener, Clifford D. Pierce, Jr., Donald W. Jones, Eugene N. Collins*, and *Randall L. Nelson;* and for the National Institute of Municipal Law Officers by *Roger F. Cutler, Roy D. Bates, George Agnost, Benjamin L. Brown, J. Lamar Shelley, John W. Witt, Robert J. Alfton, James K. Baker, Clifford D. Pierce, Jr., William H. Taube, William I. Thornton, Jr., Henry W. Underhill, Jr.*, and *Charles S. Rhyne.*

*David Epstein* filed a brief for the American Ambulance Association et al. as *amici curiae.*

[1] The City is located in both Eau Claire and Chippewa Counties.

the provision of such services to the provision of sewage collection and transportation services.[2]   Under the Federal Water Pollution Control Act, 33 U. S. C. § 1251 *et seq.*, the City had obtained federal funds to help build a sewage treatment facility within the Eau Claire Service Area, that included the Towns; the facility is the only one in the market available to the Towns.   The City has refused to supply sewage treatment services to the Towns.   It does supply the services to individual landowners in areas of the Towns if a majority of the individuals in the area vote by referendum election to have their homes annexed by the City, see Wis. Stat. §§ 66.024(4), 144.07(1) (1982), and to use the City's sewage collection and transportation services.

Alleging that they are potential competitors of the City in the collection and transportation of sewage, the Towns contended in the District Court that the City used its monopoly over sewage treatment to gain an unlawful monopoly over the provision of sewage collection and transportation services, in violation of the Sherman Act.   They also contended that the City's actions constituted an illegal tying arrangement and an unlawful refusal to deal with the Towns.

The District Court ruled for the City.   It found that Wisconsin's statutes regulating the municipal provision of sewage service expressed a clear state policy to replace competition with regulation.   The court also found that the State adequately supervised the municipality's conduct through the State's Department of Natural Resources, that was authorized to review municipal decisions concerning provision of sewage services and corresponding annexations of land.   The court concluded that the City's allegedly anticompetitive conduct fell within the state action exemption to the federal antitrust laws, as set forth in *Community Communications*

---

[2] The complaint also alleged violations of the Federal Water Pollution Control Act, 33 U. S. C. § 1251 *et seq.*, and of a common-law duty of a utility to serve.   The District Court dismissed these claims, and they are not at issue in this Court.

*Co.* v. *Boulder,* 455 U. S. 40 (1982), and *Parker* v. *Brown, supra.* Accordingly, it dismissed the complaint.

The United States Court of Appeals for the Seventh Circuit affirmed. 700 F. 2d 376 (1983). It ruled that the Wisconsin statutes authorized the City to provide sewage services and to refuse to provide such services to unincorporated areas. The court therefore assumed that the State had contemplated that anticompetitive effects might result, and concluded that the City's conduct was thus taken pursuant to state authorization within the meaning of *Parker* v. *Brown, supra.* The court also concluded that in a case such as this involving "a local government performing a traditional municipal function," 700 F. 2d, at 384, active state supervision was unnecessary for *Parker* immunity to apply. Requiring such supervision as a prerequisite to immunity would also be unwise in this situation, the court believed, because it would erode traditional concepts of local autonomy and home rule that were clearly expressed in the State's statutes.

We granted certiorari, 467 U. S. 1240 (1984), and now affirm.

## II

The starting point in any analysis involving the state action doctrine is the reasoning of *Parker* v. *Brown.* In *Parker,* relying on principles of federalism and state sovereignty, the Court refused to construe the Sherman Act as applying to the anticompetitive conduct of a State acting through its legislature. 317 U. S., at 350–351. Rather, it ruled that the Sherman Act was intended to prohibit *private* restraints on trade, and it refused to infer an intent to "nullify a state's control over its officers and agents" in activities directed by the legislature. *Id.,* at 351.

Municipalities, on the other hand, are not beyond the reach of the antitrust laws by virtue of their status because they are not themselves sovereign. *Lafayette* v. *Louisiana Power & Light Co.,* 435 U. S. 389, 412 (1978) (opinion of BRENNAN, J.). Rather, to obtain exemption, municipalities

must demonstrate that their anticompetitive activities were authorized by the State "pursuant to state policy to displace competition with regulation or monopoly public service." *Id.*, at 413.

The determination that a municipality's activities constitute state action is not a purely formalistic inquiry; the State may not validate a municipality's anticompetitive conduct simply by declaring it to be lawful. *Parker* v. *Brown,* 317 U. S., at 351. On the other hand, in proving that a state policy to displace competition exists, the municipality need not "be able to point to a specific, detailed legislative authorization" in order to assert a successful *Parker* defense to an antitrust suit. 435 U. S., at 415. Rather, *Lafayette* suggested, without deciding the issue, that it would be sufficient to obtain *Parker* immunity for a municipality to show that it acted pursuant to a "clearly articulated and affirmatively expressed . . . state policy" that was "actively supervised" by the State. 435 U. S., at 410. The plurality viewed this approach as desirable because it "preserv[ed] to the States their freedom . . . to administer state regulatory policies free of the inhibitions of the federal antitrust laws without at the same time permitting purely parochial interests to disrupt the Nation's free-market goals." *Id.*, at 415–416.

In *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U. S. 97 (1980), a unanimous Court applied the *Lafayette* two-pronged test to a case in which the state action exemption was claimed by a private party.[3] In

---

[3] *Midcal* was originally brought as a mandamus action seeking an injunction against a state agency, the California Department of Alcoholic Beverage Control. The State played no role, however, in setting prices or reviewing their reasonableness, activities carried out by the private wine dealers. 445 U. S., at 100–101. The mere fact that the state agency was a named defendant was not sufficient to alter the state action analysis from that appropriate to a case involving the state regulation of private anticompetitive acts. See *Southern Motor Carriers Rate Conference, Inc.* v. *United States, post,* at 56–57.

that case, we found no antitrust immunity for California's wine-pricing system. Even though there was a clear legislative policy to permit resale liquor price maintenance, there was no state supervision of the anticompetitive activity. Thus, the private wine producers who set resale prices were not entitled to the state action exemption. When we again addressed the issue of a municipality's exemption from the antitrust laws in *Boulder, supra,* we declined to accept *Lafayette*'s suggestion that a municipality must show more than that a state policy to displace competition exists. We held that Colorado's Home Rule Amendment to its Constitution, conferring on municipal governments general authority to govern local affairs, did not constitute a "clear articulation" of a state policy to authorize anticompetitive conduct with respect to the regulation of cable television in the locale. Because the city could not meet this requirement of the state action test, we declined to decide whether governmental action by a municipality must also be actively supervised by the State. 455 U. S., at 51–52, n. 14.

It is therefore clear from our cases that before a municipality will be entitled to the protection of the state action exemption from the antitrust laws, it must demonstrate that it is engaging in the challenged activity pursuant to a clearly expressed state policy. We have never fully considered, however, how clearly a state policy must be articulated for a municipality to be able to establish that its anticompetitive activity constitutes state action. Moreover, we have expressly left open the question whether action by a municipality—like action by a private party—must satisfy the "active state supervision" requirement. *Boulder, supra,* at 51–52, n. 14. We consider both of those issues below.

## III

The City cites several provisions of the Wisconsin code to support its claim that its allegedly anticompetitive activity

constitutes state action. We therefore examine the statutory structure in some detail.

## A

Wisconsin Stat. § 62.18(1) (1981–1982) grants authority to cities to construct, add to, alter, and repair sewage systems. The authority includes the power to "describe with reasonable particularity the district to be [served]." *Ibid.* This grant of authority is supplemented by Wis. Stat. § 66.069(2)(c) (1981–1982), providing that a city operating a public utility

> "may by ordinance fix the limits of such service in unincorporated areas. Such ordinance shall delineate the area within which service will be provided and the municipal utility shall have no obligation to serve beyond the area so delineated."

With respect to joint sewage systems, Wis. Stat. § 144.07(1) (1981–1982) provides that the State's Department of Natural Resources may require a city's sewage system to be constructed so that other cities, towns, or areas may connect to the system, and the Department may order that such connections be made. Subsection (1m) provides, however, that an order by the Department of Natural Resources for the connection of unincorporated territory to a city system shall be void if that territory refuses to become annexed to the city.[4]

## B

The Towns contend that these statutory provisions do not evidence a state policy to displace competition in the provision of sewage services because they make no express men-

---

[4] There is no such order of the Department of Natural Resources at issue in this case.

tion of anticompetitive conduct.[5]   As discussed above, the statutes clearly contemplate that a city may engage in anticompetitive conduct.   Such conduct is a foreseeable result of empowering the City to refuse to serve unannexed areas.   It is not necessary, as the Towns contend, for the state legislature to have stated explicitly that it expected the City to engage in conduct that would have anticompetitive effects. Applying the analysis of *Lafayette* v. *Louisiana Power & Light Co.*, 435 U. S. 389 (1978), it is sufficient that the statutes authorized the City to provide sewage services and also to determine the areas to be served.   We think it is clear that anticompetitive effects logically would result from this broad authority to regulate.   See *New Motor Vehicle Board* v. *Orrin W. Fox Co.*, 439 U. S. 96, 109 (1978) (no express intent to displace the antitrust laws, but statute provided regulatory structure that inherently "displace[d] unfettered business freedom").   Accord, 1 P. Areeda & D. Turner, Antitrust Law ¶ 212.3, p. 54 (Supp. 1982).

---

[5] The Towns also rely on Wis. Stat. Ann. §§ 66.076(1) and 66.30 (1965 and Supp. 1984) to argue that the State's policy on the provision of sewage services is actually procompetitive.   This claim must fail because, aside from the fact that it was not raised below, the provisions relied upon do not support the contention.   First, it is true that § 66.076(1) permits certain municipalities, including towns, to operate sewage systems.   The provision is simply a general enabling statute, however, not a mandatory prescription.   In addition, subsection (8) of § 66.076 incorporates into the enabling statute all of the limitations of § 66.069, including the power to limit the area of service.   Thus, § 66.076(1) does not express a procompetitive state attitude.

Nor does § 66.30 aid the Towns.   It is a general provision concerning all utilities—not just sewage systems—that permits municipalities to enter into cooperative agreements.   The statute is not mandatory, but merely permissive.   Moreover, even assuming two municipalities agreed pursuant to this section to cooperate in providing sewage services, the result would not necessarily be greater competition.   Rather, the two combined might well be more effective than either alone in keeping other municipalities out of the market.

Nor do we agree with the Towns' contention that the statutes at issue here are neutral on state policy. The Towns attempt to liken the Wisconsin statutes to the Home Rule Amendment involved in *Boulder,* arguing that the Wisconsin statutes are neutral because they leave the City free to pursue either anticompetitive conduct or free-market competition in the field of sewage services. The analogy to the Home Rule Amendment involved in *Boulder* is inapposite. That Amendment to the Colorado Constitution allocated only the most general authority to municipalities to govern local affairs. We held that it was neutral and did not satisfy the "clear articulation" component of the state action test. The Amendment simply did not address the regulation of cable television. Under home rule the municipality was to be free to decide every aspect of policy relating to cable television, as well as policy relating to any other field of regulation of local concern. Here, in contrast, the State has specifically authorized Wisconsin cities to provide sewage services and has delegated to the cities the express authority to take action that foreseeably will result in anticompetitive effects. No reasonable argument can be made that these statutes are neutral in the same way that Colorado's Home Rule Amendment was.[6]

The Towns' argument amounts to a contention that to pass the "clear articulation" test, a legislature must expressly state in a statute or its legislative history that the legislature intends for the delegated action to have anticompetitive effects. This contention embodies an unrealistic view of how legislatures work and of how statutes are written. No legislature can be expected to catalog all of the anticipated effects of a statute of this kind.

---

[6] Nor does it help the Towns' claim that the statutes leave to the City the discretion whether to provide sewage services. States must always be free to delegate such authority to their political subdivisions.

Furthermore, requiring such explicit authorization by the State might have deleterious and unnecessary consequences. Justice Stewart's dissent in *Lafayette* was concerned that the plurality's opinion would impose this kind of requirement on legislatures, with detrimental side effects upon municipalities' local autonomy and authority to govern themselves. 435 U. S., at 434–435. In fact, this Court has never required the degree of specificity that the Towns insist is necessary.[7]

In sum, we conclude that the Wisconsin statutes evidence a "clearly articulated and affirmatively expressed" state policy to displace competition with regulation in the area of municipal provision of sewage services. These statutory provisions plainly show that "'the legislature contemplated the kind of action complained of.'" *Lafayette, supra,* at 415 (quoting the decision of the Court of Appeals, 532 F. 2d 431, 434 (CA5 1976)).[8] This is sufficient to satisfy the "clear articulation" requirement of the state action test.

---

[7] Requiring such a close examination of a state legislature's intent to determine whether the federal antitrust laws apply would be undesirable also because it would embroil the federal courts in the unnecessary interpretation of state statutes. Besides burdening the courts, it would undercut the fundamental policy of *Parker* and the state action doctrine of immunizing state action from federal antitrust scrutiny. See 1 P. Areeda & D. Turner, Antitrust Law ¶ 212.3(b) (Supp. 1982).

[8] Our view of the legislature's intent is supported by *Town of Hallie* v. *City of Chippewa Falls,* 105 Wis. 2d 533, 314 N. W. 2d 321 (1982), in which the Supreme Court of Wisconsin rejected the Town of Hallie's challenge under state antitrust laws against the City of Chippewa Falls in a case quite similar to the one at bar. There, the Town of Hallie argued that the City's refusal to provide it with sewage treatment services, the requirement of annexation, and the City's conditioning of the provision of treatment services on the acceptance also of sewage collection and other city services, violated the state antitrust laws. The State Supreme Court disagreed, concluding that the legislature intended the City to undertake the challenged actions. Those actions therefore were exempt from the State's antitrust laws. Analyzing §§ 66.069(2)(c) and 144.07(1m), the court concluded that the legislature had "viewed annexation by the city of a surrounding unincorporated area as a reasonable *quid pro quo* that a city could

## C

The Towns further argue that the "clear articulation" requirement of the state action test requires at least that the City show that the State "compelled" it to act.   In so doing, they rely on language in *Cantor* v. *Detroit Edison Co.*, 428 U. S. 579 (1976), and *Goldfarb* v. *Virginia State Bar*, 421 U. S. 773 (1975).   We disagree with this contention for several reasons.   *Cantor* and *Goldfarb* concerned private parties—not municipalities—claiming the state action exemption.   This fact distinguishes those cases because a municipality is an arm of the State.   We may presume, absent a showing to the contrary, that the municipality acts in the public interest.[9]   A private party, on the other hand, may be presumed to be acting primarily on his or its own behalf.

None of our cases involving the application of the state action exemption to a municipality has required that compulsion be shown.   Both *Boulder*, 455 U. S., at 56–57, and *Lafayette*, 435 U. S., at 416–417, spoke in terms of the State's direction *or authorization* of the anticompetitive practice at issue.   This is so because where the actor is a municipality, acting pursuant to a clearly articulated state policy, compulsion is simply unnecessary as an evidentiary matter to prove that the challenged practice constitutes state action.   In short, although compulsion affirmatively

---

require before extending sewer services to the area." *Id.*, at 540–541, 314 N. W. 2d, at 325.

Although the Wisconsin Supreme Court's opinion does not, of course, decide the question presented here of the City's immunity under the *federal* antitrust laws, it is instructive on the question of the state legislature's intent in enacting the statutes relating to the municipal provision of sewage services.

[9] Among other things, municipal conduct is invariably more likely to be exposed to public scrutiny than is private conduct.   Municipalities in some States are subject to "sunshine" laws or other mandatory disclosure regulations, and municipal officers, unlike corporate heads, are checked to some degree through the electoral process.   Such a position in the public eye may provide some greater protection against antitrust abuses than exists for private parties.

expressed may be the best evidence of state policy, it is by no means a prerequisite to a finding that a municipality acted pursuant to clearly articulated state policy.

## IV

Finally, the Towns argue that as there was no active state supervision, the City may not depend on the state action exemption. The Towns rely primarily on language in *Lafayette*. It is fair to say that our cases have not been entirely clear. The plurality opinion in *Lafayette* did suggest, without elaboration and without deciding the issue, that a city claiming the exemption must show that its anticompetitive conduct was actively supervised by the State. 435 U. S., at 410. In *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U. S. 97 (1980), a unanimous Court held that supervision is required where the anticompetitive conduct is by private parties. In *Boulder*, however, the most recent relevant case, we expressly left this issue open as to municipalities. 455 U. S., at 51–52, n. 14. We now conclude that the active state supervision requirement should not be imposed in cases in which the actor is a municipality.[10]

As with respect to the compulsion argument discussed above, the requirement of active state supervision serves essentially an evidentiary function: it is one way of ensuring that the actor is engaging in the challenged conduct pursuant to state policy. In *Midcal*, we stated that the active state supervision requirement was necessary to prevent a State from circumventing the Sherman Act's proscriptions "by casting . . . a gauzy cloak of state involvement over what is

---

[10] In cases in which the actor is a state agency, it is likely that active state supervision would also not be required, although we do not here decide that issue. Where state or municipal regulation by a private party is involved, however, active state supervision must be shown, even where a clearly articulated state policy exists. See *Southern Motor Carriers Rate Conference, Inc.* v. *United States, post*, at 62.

essentially a private price-fixing arrangement." 445 U. S., at 106. Where a private party is engaging in the anticompetitive activity, there is a real danger that he is acting to further his own interests, rather than the governmental interests of the State. Where the actor is a municipality, there is little or no danger that it is involved in a *private* price-fixing arrangement. The only real danger is that it will seek to further purely parochial public interests at the expense of more overriding state goals. This danger is minimal, however, because of the requirement that the municipality act pursuant to a clearly articulated state policy. Once it is clear that state authorization exists, there is no need to require the State to supervise actively the municipality's execution of what is a properly delegated function.

## V

We conclude that the actions of the City of Eau Claire in this case are exempt from the Sherman Act. They were taken pursuant to a clearly articulated state policy to replace competition in the provision of sewage services with regulation. We further hold that active state supervision is not a prerequisite to exemption from the antitrust laws where the actor is a municipality rather than a private party. We accordingly affirm the judgment of the Court of Appeals for the Seventh Circuit.

*It is so ordered.*