776 F.2d 1043
 1985-2 Trade Cases 66,821
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Baltimore County, Maryland, a body corporate and politic
v.
Simkins* Industries, Inc.
 No. 84-1637.
 United States Court of Appeals, Fourth Circuit
 Oct. 11, 1985.
 
 Before MURNAGHAN, ERVIN and SNEEDEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Simkins Industries, Inc. appeals from a judgment entered on December 16, 1983 granting Baltimore County's motion for summary judgment in a suit initiated by the County to recover $59,077.87 in unpaid sewer service bills.[1]
 
 
 2
 Simkins does not dispute the fact that it failed to pay the three invoices for sewer services on which suit was brought.[2] Rather, it argues that the sewer service charges billed in the invoices were based on an exorbitant and unsubstantiated rate increase. Simkins further has contended that the rate increase created a burden on interstate commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. Sec. 1, et seq. The district court determined that the increased rates had been properly assessed pursuant to two executive orders signed by the County Executive of Baltimore County on May 19, 1980 and April 8, 1981 and granted the County's motion for judgment on the pleadings. Similarly, Simkins' antitrust counterclaim was dismissed.[3]
 
 
 3
 Simkins perceives that there exists a dispute of material fact concerning the authenticity of the Baltimore County executive orders introduced by the County to substantiate the increased sewer service charges. Simkins takes issue primarily with an executive order dated April 8, 1981 which contains both an unnumbered page and a misnumbered section. Simkins suggests foul play on the County's part, implying that the unnumbered page was added at some later date solely to substantiate the County's claim that the increase was authorized by the document. To us it appears, however, that the flaws were inadvertent, attributable to bureaucratic fumbling rather than to a suspicious and premeditated device by the County to cover-up any prior misdeeds.
 
 
 4
 The deposition testimony of County officials William Riehl, Supervisor of Cost and Computation for the Baltimore County Office of Finance, and Martin Beumer, Section Chief of the Service Charge Section of the Office of Finance, confirmed the rate increases and the authenticity of the documents. While it is true that Riehl only assumed his supervisory position in September 1981 and was unable to explain the mysterious unnumbered page and paragraph, Beumer, who participated in the actual preparation and review of the orders filled in the interstices left by Riehl's testimony. The testimony or affidavit of the actual custodian of the records was unnecessary to authenticate the documents, as Fed.R.Evid. 901(a)(1) provides that the authentication requirement is satisfied by the testimony of "a person with knowledge" that the document is what it is claimed to be. Beumer, as one who prepared the executive orders at issue, was qualified to attest to their authenticity. See generally, 5 Weinstein on Evidence, p 901(b)(1) at p. 901-24 (1983).
 
 
 5
 Baltimore County may not have gone about the process of increasing its sewer service charges in the most careful and exacting manner. While governmental entities should be encouraged to use precision in such matters, the flaws here fail to raise "genuine issues of material fact" concerning the authenticity of the documents. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.1979). Considering the evidence in the light most favorable to Simkins, the deposition testimony presented before the district court removed any doubt as to the authenticity of the documents. There has been no affirmative proof by Simkins that a basis was lacking for the increased charge. In the circumstances, the imputations of skullduggery based on the failure to number a page and the misnumbering of a section on which Simkins relies have been entirely refuted by the facts with which Baltimore County countered the suspicions. Hence, we are persuaded that the grant of summary judgment in the County's favor was correct.
 
 
 6
 Accordingly, the judgment of the lower court is Affirmed.
 
 
 
 *
 Our title--Simpkins--Title stays as in Rptr
 
 
 [1]
 The judgment also contained $9,859.79 in interest on the unpaid balance, resulting in an aggregate award of $68,937.66
 
 
 [2]
 The invoices covered the periods July 8, 1980-October 3, 1980; October 3, 1980-January 2, 1981; and January 4, 1982-April 16, 1982. Simkins apparently paid its sewer service bills totalling some $110,643.88 for the period between January 2, 1981 and January 4, 1982
 
 
 [3]
 The district court correctly ruled that the "state action" exemption to the Sherman Act enunciated in Parker v. Brown, 317 U.S. 341 (1943) insulated the County's action from a counterclaim under the antitrust laws. Whether anti-competitive acts are protected by the state action exemption to the Sherman Act turns upon a demonstration that the state's actions are the result of a "clearly articulated and affirmatively expressed state policy." Community Communications Co., Inc. v. City of Boulder, Co. 455 U.S. 40, 54 (1982). See also Town of Hallie v. City of Eau Claire [1985-1 TRADE CASES p 66,484], 53 U.S.L.W. 4418 (U.S., March 26, 1985). The Maryland legislature has explicitly conferred upon the Metropolitan District of Baltimore County the power to provide for the construction, maintenance and operation of a sewer system. Such authority includes the right to collect fees for connection to the system and for annual assessments. 1924 Md.Laws Ch. 539. Baltimore County, upon becoming a charter county in 1957, retained all of the powers conferred upon the Metropolitan District. Baltimore County, Md.Code Sec. 34-11 (1978 and Supp.1982)