Bobby AUTON, etc., et al.,
Plaintiffs-Appellants,

v.

DADE CITY, FLORIDA, a Municipal
Corporation, Defendant-Appellee.

No. 85–3157.

United States Court of Appeals,
Eleventh Circuit.

March 3, 1986.

Herbert T. Schwartz, Wood, Lucksinger & Epstein, Houston, Tex., for plaintiffs-appellants.

Donna Sumner Cox, City Atty., Dade City, Fla., for defendant-appellee.

Before HILL, Circuit Judge, TUTTLE and HENDERSON [*], Senior Circuit Judges.

HILL, Circuit Judge:

Appellants are private water well contractors engaged in business in or around Dade City, Florida. They brought suit under the Florida Antitrust Act of 1980, Fla. Stat. Ch. 542 (1985), section 2 of the Sherman Act, 15 U.S.C. § 2 (1982), and section 16 of the Clayton Act, 15 U.S.C. § 26 (1982) to enjoin enforcement of Dade City Ordinance No. 478. Appellants claim the ordinance, which prohibits the construction of private water wells for drinking, irrigation, cleaning or processing purposes within the city limits, creates a monopoly over water

[*] See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

distribution in the city. Following a bench trial, the district court held the ordinance qualified for exemption from the federal antitrust laws under the state action exemption.[1]

■■■ The parties agree that this case is governed by the standard of municipal antitrust immunity expressed in *Town of Hallie v. City of Eau Claire,* —— U.S. ——, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), which was decided approximately one month after the district court's decision in this case. Municipalities are not automatically exempt from the antitrust laws under the state action doctrine; "to obtain exemption, municipalities must demonstrate that their anticompetitive activities were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *Hallie,* 105 S.Ct. at 1716 (quoting *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978) (Brennan, J., plurality). In order to show state authorization, a municipality "must demonstrate that it is engaging in the challenged activity pursuant to a clearly expressed state policy." *Hallie,* 105 S.Ct. at 1717. While a general grant of authority to govern local affairs is insufficient to constitute a clear articulation of state policy because the State's position is neutral with respect to the city's conduct, *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 54–56, 102 S.Ct. 835, 842–43, 70 L.Ed.2d 810 (1982), it is not necessary for the legislature to state explicitly that it intends or expects the municipality's conduct to have anticompetitive effects. The clear articulation requirement is satisfied if the statutory provisions plainly show that the legislature contemplated anticompetitive conduct would result from the authority granted the municipality. *Hallie,* 105 S.Ct. at 1718–19.

■■■ The issue in this case is whether the Florida statutes authorizing municipal water systems satisfy the "clear articulation" requirement expressed in *Hallie.* Appellants contend the statutes are closer to the neutral general authorization in *City of Boulder, supra.* Appellees argue, and the district court found, that the statutory scheme contains a clearly articulated state policy which authorizes Dade City to engage in anticompetitive conduct.

We hold Dade City's conduct was authorized by clearly articulated state policy. Appellants argue the Florida legislature was neutral toward this conduct because Fla.Stat. § 180.06 is merely a vague enabling statute more analogous to the Home Rule Amendment in *City of Boulder* than the Wisconsin statutes in *Hallie.* We do not agree. The Colorado Home Rule Amendment was characterized as neutral because it was completely silent regarding the city's conduct. *City of Boulder,* 455 U.S. at 55, 102 S.Ct. at 842–43. Here, the Florida legislature has enacted several statutes concerning municipalities and their water and sewage systems. Fla.Stat. § 180.06(3), (6) (1985) authorizes municipalities "to provide a water supply for domestic, municipal or industrial uses" and "incidental to such purposes and to enable the accomplishment of the same, to construct reservoirs, sewerage systems, trunk sewers, intercepting sewers, pumping stations, wells, siphons, intakes, pipelines, distribution systems, purification works, collection systems, treatment and disposal works." Section 180.06 also provides that

> a private company or municipality shall not construct any system ... authorized to be constructed hereunder in the event that a system ... of a similar character is being actually operated by a municipality or private company in the municipality · or territory immediately adjacent thereto, unless such municipality or private company consents to such construction.

This indicates that the legislature recognized that municipal public works often require anticompetitive practices. To en-

---

**1.** The district court did not expressly decide the pendent state antitrust claim. It was not necessary to do so, however, because conduct exempt under federal antitrust law is also exempt from Fla.Stat. Ch. 542. Fla.Stat. § 542.20 (1985).

gage in one of the authorized public works, a municipality may exercise its corporate powers within its corporate limits and extend outside its corporate limits up to another municipality's boundary. Fla.Stat. § 180.02(1), (2) (1985). These sections are similar to the Wisconsin statutes found to satisfy the clear articulation requirement in *Hallie*. The Florida statutory scheme, however, contains additional provisions which strengthen the conclusion that the legislature contemplated municipalities would engage in anticompetitive conduct in the course of providing their citizens with a water supply. For example, Fla.Stat. § 180.22 (1985) grants municipalities the power of eminent domain in connection with the activities authorized by Chapter 180 while Fla.Stat. § 166.411 (1985) authorizes the use of eminent domain for, among other municipal purposes, the use of water pipes, sewage and drainage purposes, and Fla.Stat. § 180.13 (1985) grants the power to fix water rates. The cumulative effect of these statutes is to grant Florida municipalities broad power to provide water to their inhabitants. The Florida legislature, concerned with ensuring "adequate and dependable supplies of water" to meet the needs of rapidly urbanizing areas, Fla.Stat. § 373.196(1) (1985), stated that "[i]t is further the intent that municipalities, counties, and regional water authorities are to have the primary responsibility for water supply...." Fla.Stat. § 373.196(2) (1985). "[I]t is clear that anticompetitive effects logically would result from this broad authority to regulate." *Hallie*, 105 S.Ct. at 1718.

AFFIRMED.