FALLS CHASE SPECIAL TAXING DIS-
TRICT; Elba, Inc.; Sunshine Land De-
velopment, Inc.; and E. Lamar Bailey
Associates, Plaintiffs-Appellants,

v.

CITY OF TALLAHASSEE,
Defendant-Appellee.

No. 85–3575.

United States Court of Appeals,
Eleventh Circuit.

May 6, 1986.

Geoffrey B. Schwartz, Tallahassee, Fla.,
for plaintiffs-appellants.

Harry O. Thomas, Julian D. Clarkson,
Robert R. Feagin, III, Tallahassee, Fla., for
defendant-appellee.

Before FAY and KRAVITCH, Circuit
Judges, and HENLEY,* Senior Circuit
Judge.

PER CURIAM:

Seeking injunctive relief and treble dam-
ages, the Falls Chase Special Taxing Dis-
trict brought suit against the City of Talla-
hassee under the federal and Florida anti-
trust laws. The United States District
Court for the Northern District of Florida,
580 F.Supp. 967, found that the City of
Tallahassee's allegedly anticompetitive ac-
tivities were protected by the state action
exemption to the federal antitrust laws be-
cause the activities were authorized by the
State of Florida. Accordingly, the district
court granted the City of Tallahassee's mo-
tion for summary judgment. We affirm.

I.

The Falls Chase Special Taxing District
(the District) is a special district [1] created
by Leon County ordinance on February 11,
1975. The District is located adjacent to
the City of Tallahassee (the City), in the

* Honorable J. Smith Henley, Senior U.S. Circuit
Judge for the Eighth Circuit, sitting by designa-
tion.

1. A "special district" is "a local unit of special
government ... created pursuant to general or

special law for the purpose of performing pre-
scribed specialized functions within limited
boundaries and includes municipal service tax-
ing or benefit units." Fla.Stat. § 200.001(8)(c)
(1985).

unincorporated area of Leon County, Florida. On February 26, 1981 the District[2] filed suit against the City, alleging that the City violated the Sherman Act, 15 U.S.C. §§ 1–7 (1982), and the Florida Antitrust Act of 1980, Fla.Stat. §§ 542.15–.36 (1985), in attempting to acquire a monopoly over the provision of water and sewage treatment services in Leon County, and by tying the provision of sewage services to the provision of water services. There are no material facts in dispute.

Beginning in 1972, the District's developers had attempted to secure a commitment from the City to provide the District with water and sewage treatment services. No agreement was reached. In 1978, the District decided to construct and operate its own water and sewage treatment systems. In 1979, the District applied to the Florida Department of Environmental Regulation for a permit to construct the water and sewage treatment systems. The City objected to the issuance of the permit. The District ultimately prevailed and brought this action in district court against the City for challenging the issuance of the construction permit.

Alleging that it is a potential competitor of the City in the collection and treatment of water and sewage, the District contended that the City engaged in "vexatious litigation" in attempting to gain an unlawful monopoly over the provision of water and sewage treatment services. The district court granted the City's motion for summary judgment.[3] The court found that Florida's statutes regulating the municipal provision of water and sewage services expressed a clear state policy to replace competition with regulation. *See Town of Hal-*

lie v. City of Eau Claire, — U.S. —, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985). The court therefore concluded that the State action exemption shielded the City from liability under the federal antitrust laws.[4] The District promptly appealed.

## II.

Much of our work has already been done. In *Auton v. Dade City,* 783 F.2d 1009, 1011 (11th Cir. Mar. 3, 1986), a panel of this court recently held that the Florida "legislature contemplated municipalities would engage in anticompetitive conduct in the course of providing their citizens with a water supply." Because we see no meaningful distinction between this case and our case, we rely on, and quote copiously from, *Auton:*

The parties agree that this case is governed by the standard of municipal antitrust immunity expressed in *Town of Hallie v. City of Eau Claire,* — U.S. —, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), which was decided approximately one month after the district court's decision in this case. Municipalities are not automatically exempt from the antitrust laws under the state action doctrine; "to obtain exemption, municipalities must demonstrate that their anticompetitive activities were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.'" *Hallie,* 105 S.Ct. at 1716 (quoting *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978) (Brennan, J., plurality). In order to show state authorization, a municipality "must demonstrate that it is engaging in the

---

2. Elba, Inc., Sunshine Land Development, Inc. and E. Lamar Bailey Associates were also named as plaintiffs. These plaintiffs own substantially all of the private property within the District and are developing the property for residential and commercial uses.

3. Originally, the district court denied the City's motion for summary judgment. After the Supreme Court decided *Town of Hallie v. City of Eau Claire,* — U.S. —, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), however, the City filed a motion for reconsideration. On June 20, 1985

the district court granted the motion for reconsideration and entered summary judgment in favor of the City.

4. The district court did not reach the pendent state antitrust claim. It was not necessary for the court to do so, however, because conduct exempt under the federal antitrust laws is also exempt from the Florida Antitrust Act of 1980. Fla.Stat. § 542.20 (1985). *See Auton v. Dade City,* 783 F.2d 1009, 1010 n. 1 (11th Cir.1986).

challenged activity pursuant to a clearly expressed state policy." *Hallie*, 105 S.Ct. at 1717. While a general grant of authority to govern local affairs is insufficient to constitute a clear articulation of state policy because the State's position is neutral with respect to the city's conduct, *Community Communications Co. v. City of Boulder*, 455 U.S. 40, 54–56, 102 S.Ct. 835, 842–43, 70 L.Ed.2d 810 (1982), it is not necessary for the legislature to state explicitly that it intends or expects the municipality's conduct to have anticompetitive effects. The clear articulation requirement is satisfied if the statutory provisions plainly show that the legislature contemplated anticompetitive conduct would result from the authority granted the municipality. *Hallie*, 105 S.Ct. at 1718–19.

The issue in this case is whether the Florida statutes authorizing municipal water systems satisfy the "clear articulation" requirement expressed in *Hallie*. Appellants contend the statutes are closer to the neutral general authorization in *City of Boulder, supra*. Appellees argue, and the district court found, that the statutory scheme contains a clearly articulated state policy which authorizes Dade City to engage in anticompetitive conduct.

We hold Dade City's conduct was authorized by clearly articulated state policy. Appellants argue the Florida legislature was neutral toward this conduct because Fla.Stat. § 180.06 is merely a vague enabling statute more analogous to the Home Rule Amendment in *City of Boulder* than the Wisconsin statutes in *Hallie*. We do not agree. The Colorado Home Rule Amendment was characterized as neutral because it was completely silent regarding the city's conduct. *City of Boulder*, 455 U.S. at 55, 102 S.Ct. at 842–43. Here, the Florida legislature has enacted several statutes concerning municipalities and their water and sewage systems. Fla.Stat. § 180.06(3), (6)

(1985) authorizes municipalities "to provide a water supply for domestic, municipal or industrial uses" [5] and "incidental to such purposes and to enable the accomplishment of the same, to construct reservoirs, sewerage systems, trunk sewers, intercepting sewers, pumping stations, wells, siphons, intakes, pipelines, distribution systems, purification works, collection systems, treatment and disposal works." Section 180.06 also provides that

> a private company or municipality shall not construct any system ... authorized to be constructed hereunder in the event that a system ... of a similar character is being actually operated by a municipality or private company in the municipality or territory immediately adjacent thereto, unless such municipality or private company consents to such construction.

This indicates that the legislature recognized that municipal public works often require anticompetitive practices. To engage in one of the authorized public works, a municipality may exercise its corporate powers within its corporate limits and extend outside its corporate limits up to another municipality's boundary. Fla.Stat. § 180.02(1), (2) (1985). These sections are similar to the Wisconsin statutes found to satisfy the clear articulation requirement in *Hallie*. The Florida statutory scheme, however, contains additional provisions which strengthen the conclusion that the legislature contemplated municipalities would engage in anticompetitive conduct in the course of providing their citizens with a water supply. For example, Fla.Stat. § 180.22 (1985) grants municipalities the power of eminent domain in connection with the activities authorized by Chapter 180 while Fla.Stat. § 166.411 (1985) authorizes the use of eminent domain for, among other municipal purposes, the use of water pipes, sewage and drainage pur-

---

**5.** Similarly, Fla.Stat. § 180.06(4) (1985) authorizes municipalities "[t]o provide for the collec-

tion and disposal of sewage."

poses, and Fla.Stat. § 180.13 (1985) grants the power to fix water rates. The cumulative effect of these statutes is to grant Florida municipalities broad power to provide water to their inhabitants. The Florida legislature, concerned with ensuring "adequate and dependable supplies of water" to meet the needs of rapidly urbanizing areas, Fla.Stat. § 373.196(1) (1985), stated that "[i]t is further the intent that municipalities, counties, and regional water authorities are to have the primary responsibility for water supply...." Fla.Stat. § 373.-196(2) (1985). "[I]t is clear that anticompetitive effects logically would result from this broad authority to regulate." *Hallie*, 105 S.Ct. at 1718.

### III.

We similarly hold that these statutory provisions evidence a clearly expressed state policy favoring the City's actions in our case. Our inquiry, however, is not yet completed. The District has raised an argument not discussed in *Auton*. It suggests that because the City acted outside the state authorization, its actions cannot be shielded. This argument is based upon the City's failure to follow the procedures outlined in the Florida statutes.

In *Scott v. City of Sioux City*, 736 F.2d 1207, 1215–16 (8th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985), the Eighth Circuit recently decided that a city's slight departure from state mandated procedures did not abrogate the city's antitrust immunity. "The city's departure from state procedural requisites would have to be extreme to warrant the threat of antitrust liability. State authorization for antitrust purposes does not require administrative decisions

that are free from ordinary errors." *Id.* Here, the District argues that the City did not abide by Fla.Stat. § 180.02(3) (1985) because the City did not enact an ordinance creating a "zone or area" within which it would provide utility services.[6] We agree with the district court that this slight error "is not sufficient to strip the city of immunity." The City's slight departure from the procedural requisites of the Florida Statutes does not in this case raise a genuine issue of material fact as to whether the City forfeited state authorization. *See Scott*, 736 F.2d at 1215.

### IV.

Based upon the above analysis and authorities, we conclude that the City's allegedly anticompetitive activities are shielded from antitrust liability. Accordingly, the summary judgment entered by the United States District Court for the Northern District of Florida is

AFFIRMED.

---

6. Fla.Stat. § 180.02(3) provides:

In the event any municipality desires to avail itself of the provisions or benefits of this chapter, it is lawful for such municipality to create a zone or area by ordinance and to prescribe reasonable regulations requiring all persons or corporations living or doing business within said area to connect, when available, with any sewerage system constructed, erected and operated under the provisions of this chapter; provided, however, in the creation of said zone the municipality shall not include any area within the limits of any other incorporated city or village, nor shall such area or zone extend for more than 5 miles from the corporate limits of said municipality.