CENTRAL FLORIDA CLINIC FOR
REHABILITATION, INC., Plaintiff,

v.

CITRUS COUNTY HOSPITAL BOARD
and Beverly Enterprises, a California
corporation d/b/a Beverly–Gulf Coast,
Inc., Defendants.

No. 87–71–Civ–Oc–12.

United States District Court,
M.D. Florida,
Ocala Division.

Jan. 9, 1989.

Robert E. Austin, Jr., Austin, Lawrence & Landis, Leesburg, Fla., Hal K. Litchford, Litchford, Christopher & Milbrath, Orlando, Fla., for plaintiff.

Andrew G. Pattillo, Jr., Pattillo & McKeever, P.A., Ocala, Fla., for Citrus County Hosp. Bd.

Donald A. Farmer, Jr., Popham, Haik, Schnobrich, Kaufman and Doty, Ltd., James Douglas Welch, Trial Counsel, Washington, D.C., James R. Pietrzak, Chief Counsel, General Beverly Enterprises, Venice, Fla., for Beverly Enterprises.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

MELTON, District Judge.

This cause is before the Court on the Amended Motion for Summary Judgment, as to Counts I through VI of the Third Amended Complaint, filed herein on August 30, 1988, by defendant Citrus County Hospital Board (hereinafter "Board"). A brief in support of said motion was filed herein on September 13, 1988. Plaintiff filed a response in opposition thereto on September 23, 1988. For the reasons discussed below, the motion for summary judgment will be granted. The Court expresses no opinion and retains jurisdiction as to Counts VII through X of the Third Amended Complaint.

Rule 56(c), Fed.R.Civ.P., states that summary judgment shall be rendered if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court explained the standard for summary judgment:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322–323, 106 S.Ct. at 2552; *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986), the Court noted that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If

the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *See Young*, 840 F.2d at 828; *Barnes v. Southwest Forest Industry, Inc.*, 814 F.2d 607, 609 (11th Cir.1987) (equating standards for granting summary judgments and directed verdicts).

The Board's motion seeks summary judgment on the first six counts of the Third Amended Complaint, which counts allege violations of federal and state antitrust law. Plaintiff is a corporation which is engaged in the business of providing physical, occupational and speech therapy within Citrus County, Florida. The Board is a public non-profit corporation created by the Florida Legislature to operate hospitals and medical nursing and convalescent homes in Citrus County. Defendant Beverly Enterprises, Inc., (hereinafter "Beverly") is also a corporation engaged in the business of providing physical, occupational and speech therapy within Citrus County.

In the Third Amended Complaint, plaintiff alleges that the Board violated §§ 1 and 2 of the Sherman Act in three ways. First, the Board allegedly attempted to monopolize and conspire (with Beverly) to monopolize patient therapy services in Citrus County, Florida, (Counts I and II). Second, plaintiff claims that the Board used monopoly power in one market (hospital patient care) as leverage to compete unfairly in another market (out-of-hospital patient therapy services) (Counts III and IV). Third, the Board allegedly agreed with Beverly to deal reciprocally between themselves, in transferring patients and providing out-of-hospital patient therapy services, producing an unreasonably anticompetitive restraint of trade (Counts V and VI).[1]

The parties have had adequate time for discovery,[2] and, for the purposes of the motion, there is no dispute as to the material facts. The Court is faced with the issue of whether the Board's allegedly anticompetitive actions are immune from the federal antitrust laws. Two aspects of state action immunity will be discussed in turn below: 1) whether the Board's conduct was pursuant to clearly expressed state policy which contemplated the kind of action complained of, and 2) whether plaintiff has proven an illicit conspiracy which would exclude the Board from state action immunity.

*State Policy*

The first issue which must be addressed is whether the conduct with which the Board is charged in the Third Amended Complaint, assumed for purposes of summary judgment considerations to be true and to be anticompetitive, is immune from antitrust liability because carried out pursuant to clearly expressed state policy. The state action immunity stems from the Supreme Court's decision in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The Supreme Court held that neither the language, nor the legislative history, of the antitrust laws evinced an intent by Congress to preempt the power of the state to make and enforce state policies with anticompetitive consequences. *Id.* at 351–352, 63 S.Ct. at 314. The Court refused to infer an intent to nullify a state's control over its officers and agents in activities directed by the legislature. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985) (*citing Parker*, 317 U.S. at 351, 63 S.Ct. at 313). State action immunity exists in the instant case if the Board was created pursuant to a clearly articulated and affirmatively expressed state policy which contemplates the Board's actions. *See id.* 471 U.S. at 44, 105 S.Ct. at 1719.

---

**1.** The Florida Antitrust Act, Fla.Stat. § 542.01 et seq., was patterned after the Sherman Act, and was intended to complement and follow the federal court interpretations of the Sherman Act. *Auton v. Dade City, Fla.*, 783 F.2d 1009, 1010 n. 1 (11th Cir.1986). The parties have recognized this in § 8 of the Pretrial Stipulation. Accordingly, the Court's ruling on Counts I, III, and V of the Third Amended Complaint, based on the Sherman Act, will apply as well to

Counts II, IV, and VI of the Third Amended Complaint, which assert parallel, corresponding charges under the Florida Antitrust Act, Fla. Stat. §§ 542.18 and 542.19.

**2.** The Court entered an Order on April 6, 1988, which set August 1, 1988, as the last day for Court supervised discovery.

The Board was created and empowered by a special enactment of the Florida Legislature entitled the "Citrus County Hospital and Medical Nursing and Convalescent Home Act" (hereinafter "CCH Act"). 1965 Fla. Laws Ch. 65–1371, 1969 Fla. Laws Ch. 69–944, and 1970 Fla. Laws 1001. The Citrus County Hospital Board was constituted to be an agency of Citrus County and was "incorporated for the purpose of operating hospitals and medical nursing and convalescent homes in the County." CCH Act, § 3. The Board was created to operate public hospitals and nursing and convalescent homes "primarily and chiefly for the benefit of the citizens and residents of Citrus County." CCH Act, § 5. The Board is also authorized to operate an ambulance service. § 5.

The CCH Act granted extensive powers to the Board. The Board was granted the authority "to build, erect, expand, equip, maintain, operate, alter, change, lease and repair public hospitals and medical nursing homes and convalescent homes in Citrus County." § 5. The Act defines "operate" to include "build, construct, maintain, repair, alter, expand, equip, lease, finance, and operate." § 2. The Court notes that the word "expand" is not defined in the Act and may apply to the facilities or to the services provided. The Board has the authority to extend its services to patients from other counties and states. § 5. The Act grants authority for the Board to own and acquire property, to purchase any and all equipment needed and to enter into contracts to carry out the purposes of the Act. §§ 6, 8, 9, and 11.

The Board has been granted the authority to operate with a great deal of independence from the state. The Board may levy taxes, negotiate loans, borrow money, and issue bonds and revenue certificates. §§ 6, 13–15. The Act authorizes the Board to have a quasi-regulatory function in § 10 where the Board "is empowered to and shall adopt all necessary rules and regulations and by laws for the operation of said hospitals, medical nursing homes and convalescent homes."

■ The Board's motion is controlled by the most recent Supreme Court precedent, *Town of Hallie, supra.* To establish state action immunity under the relevant legal standard, a subdivision of a state must establish only that the challenged conduct was part of a clearly articulated and affirmatively expressed state policy. The first step of the analysis is to identify a "clearly expressed state policy" that authorizes the actions of a state agency, municipality or subdivision. 471 U.S. at 38–39, 105 S.Ct. at 1718. If the anticompetitive activities subject to a Sherman Act claim are a foreseeable consequence of the state delegation, then the "clear articulation" standard is met and the state action doctrine bars the claim. *Id.* at 42–43, 105 S.Ct. at 1716.

The precise anticompetitive conduct of the Board that plaintiff challenges in this action is the Board's alleged attempt to be the sole provider in Citrus County of ancillary health care services; specifically, occupational and speech therapy services on an outpatient basis. The Court must examine in detail the statutory framework to determine whether the Board's allegedly anticompetitive conduct in its provision of therapy services in its service area was a foreseeable consequence of the legislature's delegation of power. As noted above, the Florida legislature's delegation of power to the Board in its statutory charter is expansive. Undoubtably, the Board has the power to provide ancillary health care services such as outpatient therapy. The critical question, however, is whether the legislature contemplated, expressly or by implication, that the Board would occupy the entire field within its service area in a way which would exclude other competitors.

■ The question presented to the Supreme Court in *Town of Hallie* was "how clearly a state policy must be articulated for a municipality to be able to establish that its anticompetitive activity constitutes state action." 471 U.S. at 40, 105 S.Ct. at 1717. The Court ruled that it was "not necessary ... for the state legislature to have stated explicitly that it expected the City to engage in conduct that would have

**463**

anticompetitive effects." *Id.* at 42, 105 S.Ct. at 1718. A statute sufficiently indicates a state policy which contemplates anticompetitive effects if it authorizes a municipality or state agency to provide a service and to determine the areas to be served. *See id.* In *Town of Hallie,* a Wisconsin statute "specifically authorized Wisconsin cities to provide sewage services and has delegated to the cities the express authority to take action that foreseeably will result in anticompetitive effects." *Id.* at 43, 105 S.Ct. at 1718. "[I]n proving that a state policy to displace competition exists, the municipality need not be able to point to a specific, detailed legislative authorization' in order to assert a successful *Parker* defense to an antitrust suit." *Id.* 471 U.S. at 39, 105 S.Ct. at 1716.

The Supreme Court held that the "clear articulation" test does not require that a legislature expressly state in a statute or its legislative history that it intends for the delegated action to have anticompetitive effects:

> This contention embodies an unrealistic view of how legislatures work and of how statutes are written. No legislature can be expected to catalogue all of the anticipated effects of a statute of this kind.... Requiring such a close examination of a state legislature's intent to determine whether the federal antitrust laws apply would be undesirable also because it would embroil the federal court in the unnecessary interpretation of state statutes. Besides burdening the courts, it would undercut the fundamental policy of *Parker* and the state action doctrine of immunizing state action from federal antitrust scrutiny.

*Id.* at 43–44, 105 S.Ct. at 1719.

Since *Town of Hallie,* the Eleventh Circuit has provided additional guidance concerning state action immunity in antitrust cases. In *Commuter Transportation Systems, Inc., v. Hillsborough County Aviation Authority,* 801 F.2d 1286 (11th Cir. 1986), the plaintiff alleged that the Aviation Authority was violating antitrust laws by the way in which it was restricting the operation of plaintiff's airport limousine service. The Authority was a state agency authorized to develop and administer public airports in the Tampa, Florida, area. The Authority limited limousine service due to vehicular traffic congestion at the airport; however, the plaintiff claimed that the Authority conspired with its competitors to exclude it from airport business.

The Court noted that "[u]nder the teaching of *Parker,* official conduct is immune from federal antitrust scrutiny if the state legislature 'contemplated the kind of action complained of.'" 801 F.2d at 1289 (*quoting Parker,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315). Because "[t]he Authority was authorized by the state to negotiate contracts with businesses as it may deem necessary for the development and expansion of the airport and to grant concessions," the Court found that the Authority's actions were contemplated by the state legislature and, therefore, immunized under *Parker. Id.*

■ In the instant case, this Court notes that the Board, like the Authority, was created by the Florida Legislature and its trustees were appointed by the Governor. *Id.* at 1288. Also, both the Board and the Authority were authorized to exercise wide discretion in providing services within a given area. *Id.* Although neither the Board's actions in expanding into ancillary health care services nor the Authority's actions pertaining to limousine services were specifically authorized by the state legislature, the Court finds that, as with the Authority's actions, the Board's actions were contemplated by the legislature.

In *Falls Chase Special Taxing District v. City of Tallahassee,* 788 F.2d 711 (11th Cir.1986), and *Auton v. Dade City, Fla.,* 783 F.2d 1009 (11th Cir.1986), plaintiffs claimed that municipalities were violating antitrust laws by monopolizing water and sewage treatment services and by controlling the construction of water wells, respectively. In both cases, the Court held:

> While a general grant of authority to govern local affairs is insufficient to constitute a clear articulation of state policy because the State's position is neutral with respect to the city's conduct, *Com-*

*munity Communications Co. v. City of Boulder*, 455 U.S. 40, 54–56, [102 S.Ct. 835, 842–43, 70 L.Ed.2d 810 (1982) ] it is not necessary for the legislature to state explicitly that it intends or expects the municipality's conduct to have anticompetitive effects.

*Falls Chase*, 788 F.2d at 713; *Auton*, 783 F.2d at 1010. The state action immunity applied in both cases because the state statutes cited in the cases indicated that "the legislature recognized that municipal public works often require anticompetitive practices." *Id.*

Plaintiff argues that all three of these recent Eleventh Circuit cases are tied closer to express authority from the state which clearly contemplates anticompetitive conduct. Plaintiff also argues that, unlike the Board, the defendants in these three cases had special authority to regulate. As noted above, however, the Board had complete authority to regulate the operation of the hospitals, medical nursing homes and convalescent homes in Citrus County. Although the state authority which contemplated anticompetitive conduct was clearer in the cases cited, the CCH clearly evidences a state policy which contemplated the Board's movement into the area of outpatient therapy services. The express grant of authority which defined the Board's purpose and area of operations may be fairly construed to contemplate that the Board might displace competition for outpatient services in Citrus County.

The Court notes that the statutory authority in the instant case is broad and expansive within a specified field and for a particular purpose. Section 3 of the CCH states that the Board is "incorporated for the purpose of operating hospitals and medical nursing and convalescent homes in the county." The Act clearly authorizes the Board to provide a service. The language of the CCH appears to give the Board wide discretion in the area of medical, including therapeutic, care in Citrus County. Although other portions of the CCH describe the Board's duties with reference to "public hospitals", section 3 appears to authorize the Board to operate all "hospitals" in the County. The Court finds that the CCH is more than a general grant of authority and that the legislation establishing the Board is a clearly expressed state policy which contemplated the monopolization of ancillary health care services in Citrus County. Based on the CCH and the guidance in *Town of Hallie* and recent Eleventh Circuit cases, the Court finds that the Board's allegedly anticompetitive actions were a foreseeable consequence of the state legislation.

■ Plaintiff claims that two other Florida statutes indicate that the Florida legislature did not contemplate the Board's anticompetitive actions. In the "Health Facilities and Health Services Planning Act," Fla.Stat. § 381.493(2), eight general planning guidelines for individuals in the health care field are listed. The last statement reads as follows: "It is intended that strengthening of competitive forces in the health services industry be encouraged." Because the statement is a general provision which is not mandatory, but merely permissive,[3] the statement does not negate or limit the Board's express authority to operate and make rules and regulations concerning the hospitals and medical nursing and convalescent homes in Citrus County.

■ The second statute cited by plaintiff as evidence that the Florida Legislature did not contemplate anticompetitive actions by the Board is Fla.Stat. § 155.40. The statute authorizes public hospitals to reorganize into not-for-profit Florida corporations. Plaintiff claims that since such new corporations would not be entitled to state action immunity for anticompetitive actions, the statute indicates that there is no ongoing policy that would authorize the Board to engage in monopolistic conduct in ancillary areas. The Court finds that this statute is irrelevant to the issue at hand for two reasons. First, the statute only addresses reorganization of public hospitals into not-for-profit corporations; it does not address

---

**3.** The statutory guidance is similar to one of the general Wisconsin statutes which the Supreme Court discussed in *Town of Hallie*, 471 U.S. at 42 n. 5, 105 S.Ct. at 1718 n. 5.

the limits of the powers of state agencies such as the Board. Secondly, it is possible for private actors (like a private not-for-profit corporation) to be entitled to state action immunity from antitrust allegations if the requisite state supervision exists. *See Town of Hallie*, 471 U.S. at 46, 105 S.Ct. at 1720.

Upon careful review of the grant of authority to the Hospital Board, the statutes cited by plaintiff, and the allegations in the Third Amended Complaint, the Court finds that the Florida legislature evinced a state policy that contemplates the occupation of parts or all of the particular field of delivering patient care, treatment, and services throughout Citrus County to the displacement of competition. The Board's allegedly anticompetitive conduct was a foreseeable consequence of the legislature's delegation of power to the Board.

*Proof of Unauthorized Anticompetitive Conduct*

■ The second aspect of state action immunity which must be addressed is whether plaintiff has proven that the Board's anticompetitive conduct exceeded the scope of the state action antitrust immunity. If a clearly articulated and affirmatively expressed state policy which contemplates anticompetitive conduct exists, as defined by *Town of Hallie*, plaintiff "must show a conspiracy not authorized by state law and thus beyond protection of state action immunity. *Commuter Transportation*, 801 F.2d at 1291. "In *Greyhound Rent–A–Car, Inc. v. City of Pensacola*, 676 F.2d 1380 (11th Cir.1982), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983), the court found the plaintiff must prove an illicit conspiracy to exclude the entity from state action immunity." *Id.*

■ In *Falls Chase, supra,* the plaintiff argued that the defendant municipality lost its immunity by failing to strictly follow state procedural requirements. 788 F.2d at 714. The Eleventh Circuit noted that in *Scott v. City of Sioux City*, 736 F.2d 1207, 1215–16 (8th Cir.1984), *cert. denied*, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985), the Court "decided that a city's slight departure from state mandated procedures did not abrogate the city's antitrust immunity." *Falls Chase*, 788 F.2d at 714. This Circuit cited with approval the following language from *Scott:* "The city's departure from state procedural requisites would have to be extreme to warrant the threat of antitrust liability. State authorization for antitrust purposes does not require administrative decisions that are free from ordinary errors." *Id.* Based on the policies supporting immunity from liability for anticompetitive conduct, this Court finds that the requirement of an extreme departure from state requirements applies as well to state agencies which depart from their express authority to act.

■ Plaintiff cites *Bolt v. Halifax Hospital Medical Center*, 851 F.2d 1273 (11th Cir.1988), in support of its claim that the Board participated in an illicit conspiracy which would negate the Board's immunity from antitrust liability. In *Bolt*, the plaintiff, a physician, claimed that a private, profit-making hospital, a private, not-for-profit hospital, and a governmental district hospital participated in a community-wide conspiracy to revoke the plaintiff's staff privileges at all three hospitals. The Court ruled that such a conspiracy was not included within the scope of any articulated policy of the State of Florida. Although the governmental hospital district had otherwise been clothed with state action immunity, it did not enjoy that immunity for this conspiracy "to rid a medical community of a particular physician." *Id.* at 1284.

The conspiracy in *Bolt* was not protected by state action immunity because it was beyond the scope of any "clearly articulated" state policy authorizing it. The removal of physicians from the staffs of other hospitals and the expulsion of physicians from the county medical society are actions which appear to be motivated more by malice toward the individual physicians than by authorized interests of state hospitals. In contrast to the conspiracy in *Bolt*, there is no significantly probative evidence in the instant case that the conspiracy between the Board and Beverly, assumed to be true, was not within the scope of the Board's authority.

The Court finds that the allegations in the Third Amended Complaint fall within the scope of patient care services and activities for which the Board is authorized by the CCH. Plaintiff's charge in Count I of a conspiracy to monopolize patient therapy services in nursing homes and other out-of-hospital settings is not extraneous to the powers and purpose conferred on the Board by the Legislature. Similarly, plaintiff's allegations in Count V of a reciprocal dealing agreement between the Board and Beverly is also within the purview of the Board's statutory authorization.

The mere fact that a "contract, combination, or conspiracy" exists between a state agency entitled to immunity and one or more private actors does not mean that the immunity is automatically lost. As noted above, this Circuit has held that an illicit conspiracy, not *any* conspiracy, must be proven to remove the state action immunity. *Commuter Transportation*, 801 F.2d at 1291. The Court finds that plaintiff has failed to make a showing sufficient to establish the existence of a conspiracy that was not authorized by state law and thus beyond protection of state action immunity. Based on all of the evidence presented in support of and in opposition to the motion for summary judgment, the Court concludes that there is insufficient evidence favoring plaintiff for a jury to conclude that defendant participated in an illicit conspiracy or anticompetitive action which was not contemplated by the state.

Accordingly, it is

ORDERED AND ADJUDGED:

1. That defendant Citrus County Hospital Board's Amended Motion for Summary Judgment as to Counts I through VI of the Third Amended Complaint is hereby granted; and

2. That summary judgment is hereby entered in favor of defendant Citrus County Hospital Board as to Counts I through VI of the Third Amended Complaint.

DONE AND ORDERED.