728 F.Supp. 1518 (1989)
COWBOY BOOK, LTD., an Oklahoma corporation, Plaintiff,
v.
BOARD OF REGENTS FOR AGRICULTURE AND MECHANICAL COLLEGES, acting for and on Behalf of *1519 OKLAHOMA STATE UNIVERSITY OF AGRICULTURE AND APPLIED SCIENCE, Defendant.
No. CIV-89-1398-W.
United States District Court, W.D. Oklahoma.
November 3, 1989.
Douglas A. Branch, Rodney J. Heggy, Day Hewett & Federman, Oklahoma City, Okl., for plaintiff.
Kenneth R. Webster and Dawn M. Northup, McKinney, Stringer & Webster, Oklahoma City, Okl., for defendant.

ORDER
LEE R. WEST, District Judge.
In this matter, the Plaintiff seeks to enjoin the Defendant Board of Regents from extending credit to students for the purpose *1520 of purchasing textbooks at the Oklahoma State University bookstore. The Plaintiff, a private bookstore, asserts that the extension of credit creates a monopoly in favor of Defendant's bookstore in violation of the Sherman Act, 15 U.S.C. § 1 et seq.[1] The Defendant asserts two jurisdictional defenses: 1) immunity from the antitrust laws under the state action exemption, and 2) sovereign immunity under the Eleventh Amendment. For the reasons stated below, the Court finds that the activity of which the Plaintiff complains is exempt from the antitrust laws under the doctrine of state action immunity, and dismisses the case.[2]

I.
The state action immunity exemption, frequently referred to as the Parker doctrine, stands for the proposition that the antitrust laws did not intend to prohibit the state as sovereign from imposing restraints on commerce. From this basic proposition several factors have emerged. These factors may differ according to the status of the entity involved. For example, because a municipality is not a sovereign entity for purposes of the antitrust exemption, the law requires a clear articulation of a state policy to displace competition regarding the activity of which there is an alleged violation. This clear articulation test, however, does not require that the state compel the municipality to act. Compulsion to act may be simply the best evidence of a state policy regarding the activity. On the other hand, compulsion may be required when a private entity operating under the color of state law or regulation is involved. This is based on the fact that a municipality is presumed to act in the public interest, whereas a private party may be presumed to act primarily on its own behalf.[3] In addition, a municipality is more likely to be exposed to public scrutiny than is private conduct. Thus, another factor to be considered is whether the state actively supervises the activity. Notwithstanding the different factors used, one common goal remains: To determine whether the activity in question is the act of the state as sovereign (i.e., an act of government). With this goal in mind, the Court discusses the cases below which served as the basis for this Order.
In Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the United States Supreme Court considered whether a state could displace competitive activities. In that case, the California legislature established a program for marketing agricultural commodities so as to restrict competition among growers and to maintain prices. The Court observed that the California statute's declared purpose was to conserve agricultural wealth and prevent economic waste in the marketing of agricultural products. Id. at 346, 63 S.Ct. at 311.
In Parker, the Court held that the Sherman Act did not intend "to restrain state action or official action directed by a state." Id. at 351, 63 S.Ct. at 313. The Court explained that the Sherman Act did not prohibit a state as sovereign to impose restraints as an act of government. Id. at 352, 63 S.Ct. at 314. Thus, the Parker standard allows an exemption from the antitrust laws if the act complained of constitutes the action of a state in its sovereign capacity.
The Parker doctrine is not so broad as to constitute an automatic "status" exemption for state agencies. Some acts of state agencies are not acts of government by the state as sovereign. In Goldfarb v. Virginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), reh'g denied, 423 U.S. 886, 96 S.Ct. 162, 46 L.Ed.2d 118 (1975), the Court found that a minimum-fee schedule for legal services promulgated by a county bar association was subject to antitrust attack. There, the Virginia statutes *1521 did not mention a fee schedule nor did the Virginia Supreme Court Rules compel a minimum fee schedule. Additionally, the state bar was deemed a state agency for "some limited purposes" and the county bar association "had voluntarily joined in what is essentially a private anticompetitive activity ..." Id. 421 U.S. at 791-792, 95 S.Ct. at 2015-2016.
On the other hand, actions of state agencies which are actively supervised[4] and which embody a clearly and affirmatively expressed state policy[5] rise to the level of immunity under the state action exemption. In Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), reh'g denied, 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977), the court held that the Arizona Supreme Court's disciplinary rules restraining advertisement in the legal profession was not subject to antitrust scrutiny because the rule expressed a clear state policy and the activity was supervised through enforcement proceedings. The court noted that the activity was subject to "pointed re-examination by the policymaker." Id. 433 U.S. at 362, 97 S.Ct. at 2698.
The "clear articulation" standard has developed primarily through the interpretation of the actions of municipalities, public utilities, and private entities imbued with statutory authority, none of which are sovereign entities, but may attain the cloak of sovereignty through express policies of the state. See Town of Hallie v. City of Eau Claire, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985); Southern Motor Carriers Rate Conference, Inc. v. United States, 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985); Community Communications Co. v. City of Boulder, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982); California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978); and Cantor v. Detroit Edison Co., 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976).
In Town of Hallie v. City of Eau Claire, supra, the court distinguished the "compelled" actions noted in Cantor v. Detroit Edison Co., supra, and Goldfarb v. Virginia State Bar, supra, as follows:
The Towns further argue that the "clear articulation" requirement of the state action test requires at least that the city show that the State "compelled" it to act. In so doing, they rely on language in Cantor v. Detroit Edison Co. [citation omitted], and Goldfarb v. Virginia State Bar [citation omitted]. We disagree with this contention for several reasons. Cantor and Goldfarb concerned private parties  not municipalities  claiming the state action exemption. This fact distinguishes those cases because a municipality is an arm of the State. We may presume, absent a showing to the contrary, that the municipality acts in the public interest. A private party, on the other hand, may be presumed to be acting primarily on his own or its own behalf." Id. 471 U.S. at 45, 105 S.Ct. at 1719.
In a footnote, the court further developed the reliability of public actors versus private conduct:
Among other things, municipal conduct is invariably more likely to be exposed to public scrutiny than is private conduct. Municipalities in some States are subject to "sunshine" laws or other mandatory disclosure regulations, and municipality officers, unlike corporate heads, are checked to some degree through the electorial process. Such a position in the public eye may provide some greater protection against antitrust abuses than exists for private parties. Id. at n. 9.
Thus, although municipalities are not sovereign by virtue of their status,[6] the *1522 court nevertheless gives deference to activities which are exposed to public scrutiny.
In light of the cases above discussed, the Court looks to the following factors in the instant case: The Board of Regents' status, state supervision of the Board's financial affairs, and state policies regarding financial assistance to the students. The discussion that follows serves as a basis for the Court's conclusion that the act of extending credit to students of the University constitutes the act of the State of Oklahoma as sovereign, sufficient to meet the requirements of the state action exemption to the antitrust laws.

II.
The Court first notes that the Board of Regents for Agricultural and Mechanical Schools and Colleges is a constitutionally created board. Oklahoma Constitution, Article 6 § 31a. This constitutionally created board is not an agency as defined by the Oklahoma Statutes. See 74 O.S. § 3301 and 75 O.S. § 301(1)(g). Thus, the constitutionally created Board of Regents is something more than a mere state agency, and certainly not a state agency for "limited purposes" as noted in Goldfarb v. Virginia State Bar, supra. In Hamilton v. Regents, 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343 (1934), reh'g denied, 293 U.S. 633, 55 S.Ct. 345, 79 L.Ed. 717 (1935), the United States Supreme Court deemed the constitutionally created Regents of the University of California a constitutional department or function of state government, and thereby elevated the Regent's Order to the level of a state statute. The Court said:
Appellees contend that this court has no jurisdiction because, as they say, the regents' order is not a "statute of any state" within the meaning of § 237(a), Judicial Code. But by the California constitution the regents are, with exceptions not material here, fully empowered in respect of the organization and government of the university, which, as it has been held, is a constitutional department or function of the state government. [citations omitted.] The assailed order prescribes a rule of conduct and applies to all students belonging to the defined class. And it was because of its violation that the regents by resolution suspended these students. The meaning of "statute of any state" is not limited to acts of state legislatures. It is used to include every act legislative in character to which the State gives sanction, no distinction being made between acts of the state legislature and other exertions of the state law-making power. [citations omitted] It follows that the order making military instruction compulsory is a statute of the State within the meaning of § 237(a). (Emphasis added.)
Thus, considering the weight which may be given to a constitutionally created department of the state government, the act of extending credit to students in this case could be construed as an act of sovereignty as long as the Board is within its express general powers to do so.[7]
The Board of Regents has been given broad and express powers under Oklahoma statutes. Title 70 O.S. § 3412(o) states in part:
Said Board, is hereby, expressly granted every power necessary or convenient to *1523 make institutions under its jurisdiction effective for the purposes for which they were created and are maintained and operated.
The extension of credit to students in order to purchase textbooks from the University's bookstore comes under the rubric of financial assistance to students. In order to make the universities effective it is both necessary and convenient to extend credit and otherwise financially assist students who attend those universities. The fact that the Board is a constitutionally created entity coupled with the statutory powers to do anything necessary or convenient to make the institutions effective for the purposes for which they were created meets the Parker requirements without further analysis.
Notwithstanding the above analysis, the Court further finds that the extent of state supervision of the University's financial affairs plus the state policy to provide students with assistance in financing reflects a clearly articulated state policy to displace competition in student affairs. Under 70 O.S. 3412(l) and (m) the Board of Regents is charged with the duty of providing financial statements showing in detail the condition of all funds appropriated for its use and must further audit all accounts against those funds so appropriated. Under 70 O.S. § 4001, the Board of Regents is authorized "to equip, furnish, maintain and operate" the buildings and structures under its jurisdiction, expressly including the "student union buildings" which includes the University's bookstore. This authorization is based on the Board's regard "for the comfort, convenience and welfare of their students[.]" The Oklahoma Statutes further provide bond authorization for revenues for these buildings. These bond issues require legislative approval, and the use and disposition of the funds are specified by statute. See 70 O.S. §§ 4002-4017.
Additionally, another constitutionally created board entitled the Oklahoma State Regents for Higher Education recommends budget allocation to each institution under a unified system known as the Oklahoma State System of Higher Education. See Oklahoma Constitution Article XIII-A, §§ 1 and 2. Under 62 O.S. 41.14, the Oklahoma State System of Higher Education is charged with accounting for its funds and monies pursuant to the National Committee on Standard Reports for Institutions of Higher Education. The State Regents provide year end reports entitled Current Operating Income and Expenditures, Oklahoma State Colleges and Universities. See State Regents Policies and Procedures, Chapter 4, Division of Fiscal Affairs, p. II-4-33.
Active and extensive state supervision regarding the use of monies on these universities reflects a state policy to displace competition regarding the fiscal affairs of the university, which includes extension of credit to students.
Finally, Oklahoma Statutes regarding higher education reflect express policies to assist students in financing their education. Under 70 O.S. § 6001, the Oklahoma Tuition Trust Act, one of the express intentions of the legislature is to:
[P]rovide students and their parents assistance in financing postsecondary education[.]
The Court is also cognizant of other practical effects if the extension of credit to students on state universities could be subject to antitrust attacks. Extension of credit to students for rental of dormitory rooms could well be attacked by rental businesses in the university town. Along the same lines, extensions of credit for room and board costs may include payments for food prepared in the school cafeteria. These extensions of credit could be subject to attack by local restaurants and fast food businesses. It is this Court's belief that the self-contained and self-reliant environment of a state university as created by the Oklahoma Constitution and Oklahoma statutes precludes attack by local commerce. It was an act of government to constitutionally create the Board of Regents, and further grant express powers to the Board to do everything necessary and convenient to make the state universities effective. It is therefore an act of *1524 government for the Board of Regents to extend credit to the students for textbooks.
Accordingly, the act of extending credit to the students for textbooks is shielded from the antitrust laws under the Parker doctrine of state action immunity. Therefore, Plaintiff's complaint against Defendant is hereby DISMISSED.
NOTES
[1] Plaintiff asserts in its Amended Complaint that the extension of credit constitutes a tying arrangement which creates a monopoly in the textbook market.
[2] Because the state action immunity doctrine is dispositive, the Court does not address the Eleventh Amendment issues.
[3] See discussion of Town of Hallie v. City of Eau Claire, infra.
[4] It is not required, however, that the entity be actively supervised if a clear state policy exists. See Town of Hallie v. City of Eau Claire, infra 471 U.S. at 47, 105 S.Ct. at 1720.
[5] A state policy may be clear without being expressed in detail. See Southern Motor Carriers Rate Conference, Inc. v. United States, infra 471 U.S. at 65, 105 S.Ct. at 1731.
[6] Town of Hallie v. Eau Claire, supra 471 U.S. at 38-39, 105 S.Ct. at 1716-1717. Enactment of the Local Government Antitrust Act of 1984, codified at 15 U.S.C. §§ 34-36, establishes a general rule that antitrust damages are not recoverable from local government. This law does not render the municipality analysis inapplicable for determining injunctive relief or for purposes of analogy.
[7] This Court distinguishes Community Communications Co. v. City of Boulder, supra, because the municipality is by definition not sovereign. There, the Colorado Constitution created a municipality with guaranteed local autonomy. Id. 455 U.S. at 54, 102 S.Ct. at 842. Thus, the Colorado Constitution created an entity as expressly non-state government (i.e. local government). Here, the Oklahoma Constitution created a Board which functions as state government by governing state universities. In Fisher v. City of Berkeley, 475 U.S. 260, 261, 106 S.Ct. 1045, 1046, 89 L.Ed.2d 206 (1986), the court observed that the ultimate source of the Parker immunity was the state, not its subdivisions.