Jean JOHNSON, Seymour Johnson, Anne Hirsch and Joseph Tieger, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

SOUNDVIEW APARTMENTS HOUSING DEVELOPMENT FUND CO., INC. and United Home for Aged Hebrews and George M. Friedland, Herbert Platzner, Saunders T. Preiss and Charles H. Singer, individually and as officers of defendants Soundview Apartments Housing Development Fund Co., Inc. and United Home for Aged Hebrews, Defendants and Third-Party Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Samuel R. Pierce, Secretary, United States Department of Housing and Urban Development, and Joseph D. Monticciolo, Regional Administrator, United States Department of Housing and Urban Development, Third-Party Defendants and Defendants.

No. 81 Civ. 4803 (JES).

United States District Court, S.D. New York.

Nov. 17, 1986.

Westchester Legal Services, Inc., White Plains, N.Y., for plaintiffs; Joy Blumkin, Stephen Norman, of counsel.

Satterlee & Stephens, New York City, for defendants and third-party plaintiffs Soundview Apartments, United Home, Friedland, Platzner, Preiss and Singer; James F. Rittinger, Ronald R. Papa, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for third-party defendants and defendants Housing and Urban Development, Pierce and Monticciolo; Carolyn L. Simpson, Asst. U.S. Atty., of counsel.

SPRIZZO, District Judge.

Plaintiffs brought an action alleging *inter alia* that a mandatory meal plan established by defendants in connection with certain government subsidized housing units constituted an illegal tying arrangement in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. *See* Third Amended Complaint ("Complaint") at ¶¶ 49–56.[1] Defendants moved to dismiss or, in the alternative, for summary judgment contending that the mandatory meal plan at issue did not constitute an illegal tying arrangement. The defendants further contended that, in any event, they were entitled to an immunity for any alleged antitrust violation because its mandatory meal plan had been approved by an agency of the federal government.

In an Opinion and Order rendered from the bench, the Court rejected defendants' argument that the mandatory meal plan did not, as a matter of law, constitute an illegal tying arrangement within the meaning of the antitrust laws. *See* July 23, 1982 Transcript ("Tr.") at 33.[2] In denying defendants' motion, the Court concluded that the plaintiffs adequately pleaded all of the requirements for an illegal tying arrangement. *See* Tr. at 31–34.[3] Thus, plaintiffs alleged that the defendants have substantial market power in the tying product's market, *i.e.* the market for rental housing in Southern Westchester County, New York.[4] In addition, the plaintiffs alleged that this market power enabled defendants to coerce those who sought the tying product, rental housing, to purchase the tied product, the mandatory meal plan. *See* Complaint at ¶¶ 52–53. The Court further

---

1. The allegations in plaintiffs' complaint are set forth in a previous Opinion and Order of the Court dated May 13, 1984. *See Johnson v. Soundview Apts. Housing Development Fund*, 585 F.Supp. 559, 559–60.

2. The Court's oral Order was subsequently set forth in a written Order of the Court dated August 2, 1982.

3. In *Yentsch v. Texaco*, 630 F.2d 46 (2d Cir. 1980), the Second Circuit noted that there are five specific elements to an illegal tying arrangement: (1) a tying and a tied product; (2) evidence of actual coercion by the seller forcing the buyer to accept the tied product; (3) sufficient economic power in the tying product market to coerce the purchaser to accept the tied product; (4) anticompetitive effects in the tied market; and (5) involvement of a "not insubstantial" amount of interstate commerce in the tied product market. *See id.* at 56–57.

4. The Court concluded that the complaint adequately alleges that the defendants' have market power in the tying product market because the complaint alleges that the defendants "are able, by virtue of federal subsidies, to offer shelter at rates far below the market rate, in a geographic area in which apartment vacancies are very scarce ...., and all other subsidized housing developments have lengthy waiting lists." *See* Complaint at ¶ 52; *see also* Stipulation of Facts at ¶¶ 37–43.

   Moreover, assuming *arguendo* that the tying product market should be more narrowly defined, *i.e.*, the market for *low-cost subsidized housing* in Southern Westchester County, New York, the Court is even more convinced that the defendants have sufficient economic power in the tying market in that the scarcity of low cost subsidized housing causes the demand for this product to far exceed its supply. *See* Stipulation of Facts at ¶¶ 37–43.

concluded that the plaintiffs adequately pleaded that there were anticompetitive effects in the tied product market, *i.e.*, the market for foodstuffs in the Soundview area, and that the effects upon interstate commerce were not *de minimis* or insubstantial. *See id.* at ¶ 54. Moreover, the Court held that it could not conclude as a matter of law, as it must on a motion for summary judgment, that the plaintiffs could not prove their alleged antitrust claim at trial. Therefore, the defendant's motion to dismiss or for summary judgment was denied.

The Court also rejected the defendants' contention that their conduct was exempt from the antitrust laws on the grounds of implied immunity. *See* Tr. at 34–38. Specificially, defendants argued that their conduct was exempt from the antitrust laws because a handbook of the Department of Housing and Urban Development ("HUD") permitted mandatory meal plans and because HUD approved the plan at issue in this case. *See* Defendants' Memorandum of Law in Support of Motion to Dismiss and/or for Summary Judgment ("Def. Mem.") at 24–29. The Court found that the defendants had not carried their burden of showing that the mandatory meal plan was specifically authorized or required by an Act of Congress or lawful government regulation and that the mere approval of such a meal plan in a HUD handbook was not sufficient to make out the immunity defense. *See* Tr. at 38; *cf. National Gerimedical Hospital v. Blue Cross,* 452 U.S. 378, 388–89, 101 S.Ct. 2415, 2421–22, 69 L.Ed.2d 89 (1981).

Subsequently, the defendants moved for reconsideration of their motion to dismiss or, in the alternative, for summary judgment based upon the decision of the Supreme Court in *Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). *See Johnson v. Soundview Apts. Housing De-*

*velopment Fund,* 585 F.Supp. 559, 561 (S.D.N.Y.1984). The Court denied this motion, rejecting defendants' contention that that case required a change in the Court's initial determination. *See Johnson v. Soundview Apts. Housing Development Fund,* 588 F.Supp. 1381 (S.D.N.Y.1984). Specifically, the Court reaffirmed its earlier holding that "the Court cannot conclude as a matter of law ... that plaintiffs' claims of impact on the tied market are insubstantial." *See id.* at 1383. The Court further noted that the *Jefferson Parish* case, while possibly representing a trend towards narrowing the scope of the illegal tying arrangement concept, cited with approval prior Supreme Court precedents upon which the Court had previously relied in denying defendants' initial motion. *See e.g., United States Steel Corp. v. Fortner Enterprises,* 429 U.S. 610, 620, 97 S.Ct. 861, 867–68, 51 L.Ed.2d 80 (1977); *Fortner Enterprises v. United States Steel Corp.,* 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969).

On March 27, 1985, the Supreme Court decided the cases of *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24, and *Southern Motors Carriers Rate Conference, Inc. v. United States,* 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36. In light of those cases the Court requested the parties to address the issue of whether those decisions warranted a reconsideration of the Court's ruling with respect to the defendant's antitrust immunity defense.[5] Both parties addressed that issue in papers subsequently filed with the Court.

The Court has reviewed those papers and carefully analyzed the cases referred to above. The Court concludes that those cases do not require a change in the Court's initial ruling and that the defendants' immunity defense is legally insufficient.

---

**5.** The Court made this request because the Court, in denying defendants' initial motion, had relied at least in part upon the fact that the defendants were not compelled by federal law to implement the mandatory meal plan, a cir-

cumstance that these cases held was not dispositive with respect to immunity pursuant to state regulation. *Compare Southern Motor Carriers, supra,* 471 U.S. at 59, 105 S.Ct. at 1728.

As plaintiffs' papers correctly reflect, there are two distinct and separate theories of antitrust immunity which reflect substantially different policy considerations. The state action exemption, which exempts from the antitrust laws anticompetitive conduct pursuant to a clearly articulated state policy, is based upon principles of federalism and state sovereignty. *See Hallie, supra,* 471 U.S. at 38, 105 S.Ct. at 1716; *Parker v. Brown,* 317 U.S. 341, 350–51, 63 S.Ct. 307, 313–14, 87 L.Ed. 315 (1943). While *Hallie* and *Southern Motor Carriers* liberalize and clarify the scope of the state action immunity doctrine, they have no applicability to the question raised in this case, whether immunity should exist as a matter of Congressional intent. Indeed, the Supreme Court in *Southern Motor Carriers, supra,* explicitly distinguished between the two theories of antitrust immunity, noting that a less stringent test is appropriate for state action immunity than for immunity based on a federal law to avoid the "kind of interference with state sovereignty … that … *Parker* was intended to prevent." *See* 471 U.S. at 57–58 n. 21, 105 S.Ct. at 1727 n. 21 (ellipsis in original) (quoting P. Areeda & D. Turner, *Antitrust Law* ¶ 214, p. 88 (1978)).

The doctrine of implied immunity under federal law immunizes conduct from the scrutiny of the antitrust laws only when Congress clearly intended that such conduct be exempted from the federal antitrust laws. *See National Hospital, supra,* 452 U.S. at 389, 101 S.Ct. at 2422. Implied immunity under federal law is not favored and therefore can be justified only when the application of the antitrust laws is clearly repugnant to the federal regulatory system involved. *See id.,* at 388, 101 S.Ct. at 2421; *United States v. National Ass'n of Securities Dealers,* 422 U.S. 694, 719–20, 95 S.Ct. 2427, 2442–43, 45 L.Ed.2d 486 (1975); *Northeastern Telephone Co. v. American Telephone and Telegraph Co.,* 651 F.2d 76, 82–83 (2d Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 654 (1982). Moreover, immunity "is to be regarded as implied only if necessary to make the [regulatory scheme] work, and even then only to the minimum extent necessary." *See Northeastern, supra,* 651 F.2d at 83 (brackets in original, citations omitted).

Thus, implied immunity may not be found unless a federal agency, acting pursuant to a specific congressional directive, actively regulates the particular conduct challenged or when the regulatory scheme is so pervasive that Congress must be assumed to have forsworn competition to effect the regulatory scheme at issue. *See id.* at 82 (and cases cited therein). The undisputed facts in this case do not meet those stringent standards. *See* Stipulation of Facts ¶ 22 (wherein the parties stipulate to the facts relevant to this issue).

No specific congressional directive purports to regulate or expressly authorize mandatory meal plans.[6] Moreover, there is no regulation of mandatory meal plans which is so pervasive as to warrant the inference that Congress intended that the antitrust laws be repealed with respect to such conduct. Certainly, the defendants have made no showing that the application of the antitrust laws to mandatory meal plans would be clearly repugnant to and

---

6. The only specific Congressional directive which the defendants have cited in support of their immunity claim is 42 U.S.C. § 8004 which provides in part:

> (h) Each non profit and public housing agency shall establish fees for meal service and other appropriate services provided to eligible project residences. These fees shall be reasonable…. *When meal services are provided to other project residents, fees shall be reasonable and may not exceed the cost of providing the meal service.*

> (i) The Secretary shall establish standards for the provision of services under this chapter….

*See* Def.Mem. at 24–25 (emphasis added).

As defendants' concede, this statutory section does not even relate to the type of low income housing program at issue in this case. *See* Tr. at 36–37. Therefore, the only conceivable relevancy of the cited statute is the emphasized sentence which relates to "other project residents." Nothing in that sentence, however, even remotely seeks to regulate or authorize mandatory meal plans.

unduly interfere with the operation of the low income housing laws. In this respect, this case is factually distinguishable from the cases relied upon by the defendants to establish immunity. *Compare Gordon v. New York Stock Exchange,* 422 U.S. 659, 685–86, 95 S.Ct. 2598, 2612–13, 45 L.Ed.2d 463 (1975). It follows that defendants' renewed motion for summary judgment based upon a federal antitrust immunity must be denied. *Cf. Northeastern, supra,* 651 F.2d at 83–84.

The Court and the parties have considered very carefully the need for prompt appellate review of the Court's Order denying the defendants' motion to dismiss or, in the alternative, for summary judgment. The Court has concluded that such review pursuant to 28 U.S.C. § 1292(b) is appropriate. The Court sets forth below the reasons why it concludes that the denial of defendants' motion involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *see also Isra Fruit Ltd. v. Agrexco Agricultural Export Company Ltd.,* 804 F.2d 24, 25 (2d Cir.1986).

First, the Court notes that the parties have stipulated to an agreed set of facts. In addition, the Court believes that there is substantial ground for a difference of opinion with respect to the controlling questions of law in this case. Although the plaintiffs' complaint adequately pleads the elements of an illegal tying arrangement, certainly the undisputed facts set forth a scenario which is very different from those in which Courts have traditionally found illegal tying arrangements. Thus, it is arguable that a violation of the antitrust laws should not be found, where as here, the defendant is a not-for-profit corporation providing needed services for the elderly and the handicapped.

Furthermore, there are equitable considerations present in that the defendants may well have been induced to institute the mandatory meal plan based upon the HUD handbook and HUD's at least implicit approval of that plan. While that circumstance may not rise to the level of an implied Congressional repeal of the antitrust laws with respect to mandatory meal plans, it may still be relevant to the issue of whether such a plan should constitute an illegal tying arrangement. In short, it is arguable that the policies which underlie the illegal tying arrangement concept are not well served by its application to the undisputed facts of this case, even assuming that all the requirements previously enunciated by the courts with respect to that concept technically apply to the conduct at issue.

The Court also notes that this case involves a relatively small amount of pecuniary damage claims. The defendants have submitted financial statements to the Court which indicate that the subsidized housing units in this case are operating at a loss. The defendants have also represented to the Court that they can ill afford the expense of a full trial on the merits.

In addition, the plaintiffs are indigent and therefore are also anxious to avoid a trial on the merits. Thus, it appears quite likely that either a reversal or an affirmance of the Court's ruling will result in the termination of this litigation.

The Court notes that the following two questions appear to be the controlling questions of law presented by the Court's Order denying defendants' motion:

(1) Whether the alleged mandatory meal plan constitutes an illegal tying arrangement in violation of the antitrust laws?

(2) Assuming that the mandatory meal plan does constitute a violation of the antitrust laws, are defendants entitled to implied immunity due to a Congressional intention to repeal the antitrust laws with respect to such plans?

It should also be noted that plaintiffs' complaint contains claims asserting violations of the Housing Acts. *See* Complaint at ¶¶ 60–68; *see also Johnson, supra,* 585 F.Supp. at 559–60. Those claims raise the issue of whether or not a private right of

action exists under the Housing Act in favor of plaintiffs, an issue which the Court indicated it was disposed to resolve against the defendants. *Cf. Johnson, supra,* 585 F.Supp. at 561 n. 4. However, those claims also raise the issue of whether or not the mandatory meal charges constituted a payment for rent in excess of the maximum rent permitted under the Housing Acts. The Court resolved that issue against the plaintiffs and, therefore, dismissed those claims on that basis. *See id.* at 560–61.

The issues raised by the Housing Act claims are entirely separate and apart from those raised by the antitrust claims. The Court sees no reason why an appellate review of the correctness of the Court's ruling with respect to the Housing Act claims should await a final determination of the antitrust issues. There being no just reason for delay, the Court, pursuant to Fed.R.Civ.P. 54(b), directs the entry of judgment in favor of the defendants on the third, fourth, fifth, and sixth claims in plaintiffs' third amended complaint so that an immediate appeal may be taken from this Court's decision dismissing those claims.

### CONCLUSION

For the reasons set forth *infra,* the defendants' renewed motion to dismiss or, in the alternative, for summary judgment is denied. The Court certifies the Court's denial of defendants' motion for interlocutory review pursuant to 28 U.S.C. § 1292(b). In addition, the Court, pursuant to Fed.R.Civ.P. 54(b), directs the entry of judgment in favor of the defendants on the third through sixth claims in plaintiffs' third amended complaint.

It is SO ORDERED.