993 F.2d 768
 1993-1 Trade Cases P 70,247, 83 Ed. Law Rep. 57
 PORTER TESTING LABORATORY, a General Partnership comprising
Steve Daves and Buddy Ellis, Plaintiff-Appellant,
v.
BOARD OF REGENTS FOR THE OKLAHOMA AGRICULTURE AND MECHANICAL
COLLEGES, a board appointed by the Governor; Douglas
Wilson, Executive Secretary of the Board of Regents for
Oklahoma Agriculture and Mechanical Colleges; Oklahoma
State University, a non-profit educational institution,
Defendants-Appellees.
 No. 92-6130.
 United States Court of Appeals,
Tenth Circuit.
 May 18, 1993.
 
 James M. Little of Little & Morgan, Oklahoma City, OK, for plaintiff-appellant.
 Kenneth N. McKinney and Dixie L. Coffey of McKinney, Stringer & Webster, P.C., Oklahoma City, OK, for defendants-appellees.
 Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER,* District Judge.
 BRORBY, Circuit Judge.
 
 
 1
 Plaintiff-appellant Porter Testing Laboratory (Porter) appeals the district court's grant of summary judgment to defendants based on that court's conclusion that defendants are entitled to the state action exemption from the antitrust laws.[1] Because we agree with the district court that defendants are acting under a clearly articulated and affirmatively expressed state policy and that they need not show active state supervision of the challenged activity, we affirm.
 
 
 2
 Defendants are the Board of Regents for the Oklahoma Agriculture and Mechanical Colleges, that board's executive secretary, and Oklahoma State University, a nonprofit educational institution (collectively OSU). In its complaint, Porter alleged that OSU, acting through the Oklahoma Cooperative Extension Service, has violated the Sherman and Clayton Antitrust Acts, 15 U.S.C. §§ 1, 2, 15, 22, and 26, by conspiring to monopolize certain agricultural testing services in the state of Oklahoma. The district court granted defendants' motion for summary judgment, concluding that defendants were immune from antitrust liability under the state action doctrine first articulated in Parker v. Brown, 317 U.S. 341, 350-51, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943). In arriving at this conclusion, the district court considered the test set out in California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980).
 
 
 3
 In Parker, the Supreme Court held that "nothing in the language of the Sherman Act or in its history ... suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." Parker, 317 U.S. at 350-51, 63 S.Ct. at 313. However, where, as here, the challenged activity is not directly that of the state legislature or state supreme court acting in its legislative capacity, but is rather that of another person or entity acting pursuant to state authorization, closer analysis is required to determine the availability of antitrust immunity. Hoover v. Ronwin, 466 U.S. 558, 568, 104 S.Ct. 1989, 1995, 80 L.Ed.2d 590 (1984).
 
 
 4
 In Midcal, 445 U.S. 97, 100 S.Ct. 937, the Supreme Court established a two-part test to determine whether the state action exemption is available to entities other than state legislatures. "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself." Id. at 105, 100 S.Ct. at 943 (quoting City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978)). When others carry out anticompetitive activity ostensibly pursuant to state authorization, Parker immunity is appropriate only if the replacing of free competition with some form of restraint or regulation is indeed authorized or approved by the state. Hoover, 466 U.S. at 568, 104 S.Ct. at 1995.
 
 
 5
 In determining that defendants were entitled to the Parker exemption, the district court first concluded that OSU is operating its soil testing program in accordance with a "clearly articulated and affirmatively expressed" state policy. We agree. OSU is required under Oklahoma statute to provide extension services. Title 70 Okla.Stat. § 3418 provides in part:
 
 
 6
 The Board of Regents for Oklahoma Agricultural and Mechanical Colleges shall organize and conduct agricultural extension work under the direction of Oklahoma State University....
 
 
 7
 This statute effectuates the Smith-Lever Act, 7 U.S.C. §§ 341-349, which provides in relevant part:
 
 
 8
 In order to aid in diffusing among the people of the United States useful and practical information on subjects relating to agriculture ... there may be continued or inaugurated in connection with the college or colleges in each State ... agricultural extension work which shall be carried on in cooperation with the United States Department of Agriculture....
 
 
 9
 7 U.S.C. § 341. The fact that Oklahoma State University, a nonprofit educational institution, is designated as the vehicle through which extension services will be provided is clear evidence that the legislature did not intend for soil testing to be done at a profit. As in Town of Hallie v. City of Eau Claire, 471 U.S. 34, 42, 105 S.Ct. 1713, 1718, 85 L.Ed.2d 24 (1985), the Oklahoma statute clearly contemplates anticompetitive conduct. Such conduct is the foreseeable result of authorizing a nonprofit university to conduct soil testing. We, therefore, agree with the district court that these statutes, taken together, demonstrate that "the challenged restraint [is] 'one clearly articulated and affirmatively expressed as state policy.' " Midcal, 445 U.S. at 105, 100 S.Ct. at 943 (quoting City of Lafayette, 435 U.S. at 410, 98 S.Ct. at 1135); see also Hoover, 466 U.S. at 569, 104 S.Ct. at 1995.
 
 
 10
 In opposing this conclusion, Porter argues that, before OSU can escape antitrust liability, there must be a state statute which more clearly articulates a policy to displace competition with monopoly. Appellant's Brief at 4-6. A state, however, need not describe the implementation of its program in detail in order to avoid antitrust constraints. Southern Motor Carriers Rate Conference, Inc. v. United States, 471 U.S. 48, 65, 105 S.Ct. 1721, 1731, 85 L.Ed.2d 36 (1985). A successful Parker defense does not depend on a state's ability "to point to a specific, detailed legislative authorization." City of Lafayette, 435 U.S. at 415, 98 S.Ct. at 1138. While it must be clear that the state "clearly intends to displace competition in a particular field," Southern Motor Carriers, 471 U.S. at 64, 105 S.Ct. at 1730, the Oklahoma statute here supplies the requisite clarity.[2]
 
 
 11
 Porter also argues that the district court's conclusion is contrary to Community Communications Co. v. City of Boulder, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). In City of Boulder, the Court held that Colorado's home rule statute granting broad, general governing authority to the city of Boulder was not a sufficiently clear indication that the state had intended to displace private competition in the cable television business. See id. at 54-55, 102 S.Ct. at 842-43. The city, therefore, could not shield itself from antitrust liability under the state action doctrine.
 
 
 12
 We do not find the district court's conclusion in this case contrary to City of Boulder. The Oklahoma statute here is much more specific regarding the provision of extension services than the general grant of authority found to be inadequate in City of Boulder. While Porter is correct that more than state neutrality is required to confer antitrust immunity, see id. at 55, 102 S.Ct. at 843, the Oklahoma statute, requiring a nonprofit state institution to provide extension services, evidences more than mere neutrality.
 
 
 13
 After concluding that Oklahoma had articulated a clear policy to displace competition in the field of soil testing, the district court proceeded to consider whether the second prong of the Midcal test, that requiring active state supervision of the challenged activity, applied to these defendants. The court first concluded that defendants are not private parties. We agree. Defendants are the Board of Regents for the Oklahoma Agriculture and Mechanical Colleges, a constitutionally created board, Cowboy Book, Ltd. v. Board of Regents for Agric. & Mechanical Colleges, 728 F.Supp. 1518, 1522 (W.D.Okla.1989), the Board's executive secretary, and Oklahoma State University, a nonprofit state educational institution--all nonprivate entities or state employees.
 
 
 14
 After determining that defendants were not private actors, the court then held that the state supervision requirement of Midcal "should not be applied to the activities of a state agency when there is no private entity involvement." Memo.Op. and Order dated Mar. 9, 1992 at 6, Appellant's App. at 100. We agree with this conclusion as well.
 
 
 15
 When it originally formulated the Midcal test, the Supreme Court did not explicitly restrict the test to situations involving private parties engaged in anticompetitive activity with some tie to the state. The test was stated simply as: "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself." Midcal, 445 U.S. at 105, 100 S.Ct. at 943 (quoting City of Lafayette, 435 U.S. at 410, 98 S.Ct. at 1135). The district court, however, has correctly noted that the Midcal case itself "applied the two-prong test to the actions of a private organization who set minimum prices for a privately marketed product." Memo.Op. and Order dated Feb. 4, 1991 at 5 n. 2, Supp.App. to Response Brief of Appellee at 5; see also Town of Hallie, 471 U.S. at 39, 105 S.Ct. at 1716 ("[S]tate action exemption [in Midcal] was claimed by a private party."). Further, dicta in later Supreme Court cases imply that the active supervision requirement of the Midcal test applies only to private parties. See FTC v. Ticor Title Ins. Co., --- U.S. ----, ----, 112 S.Ct. 2169, 2175, 119 L.Ed.2d 410 (1992) (characterizing the second prong of Midcal as requiring that "the State provide[ ] active supervision of anticompetitive conduct undertaken by private actors"); id. --- U.S. at ----, 112 S.Ct. at 2176 (noting that in Midcal "we announced the two-part test applicable to instances where private parties participate in a price fixing regime"); Patrick v. Burget, 486 U.S. 94, 100, 108 S.Ct. 1658, 1662, 100 L.Ed.2d 83 (1988) (stating that in Midcal "[w]e ... established a rigorous two-pronged test to determine whether anticompetitive conduct engaged in by private parties should be deemed state action and thus shielded from the antitrust laws"); id. 486 U.S. at 101, 108 S.Ct. at 1663 ("The active supervision prong of the Midcal test requires that state officials have and exercise power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy."); Town of Hallie, 471 U.S. at 46, 105 S.Ct. at 1720 (reading Midcal to hold "that supervision is required where the anticompetitive conduct is by private parties").
 
 
 16
 In Town of Hallie, 471 U.S. 34, 105 S.Ct. 1713, the Supreme Court held that the active supervision requirement of Midcal does not apply to municipalities. Id. 471 U.S. at 46, 105 S.Ct. at 1720. We find the Court's reasoning supporting that conclusion to apply equally to these defendants.
 
 
 17
 Where a private party is engaging in the anticompetitive activity, there is a real danger that he is acting to further his own interests, rather than the governmental interests of the State. Where the actor is a municipality, there is little or no danger that it is involved in a private price-fixing arrangement. The only real danger is that it will seek to further purely parochial public interests at the expense of more overriding state goals. This danger is minimal, however, because of the requirement that the municipality act pursuant to a clearly articulated state policy. Once it is clear that state authorization exists, there is no need to require the State to supervise actively the municipality's execution of what is a properly delegated function.
 
 
 18
 Id. at 47, 105 S.Ct. at 1720. In an aside, the Court noted, "[i]n cases in which the actor is a state agency, it is likely that active state supervision would also not be required." Id. at 46 n. 10, 105 S.Ct. at 1720 n. 10. Given the nature of these defendants, a constitutionally created state board, its executive secretary, and a state created and funded university, we agree with the district court that a showing of active supervision is unnecessary to qualify for state action antitrust immunity.
 
 
 19
 Alternatively, we hold that, even if defendants' activities were subject to the state supervision requirement, they would be adequately supervised to qualify for the state action exemption. As mentioned above, the Board of Regents for Oklahoma Agriculture and Mechanical Colleges is a constitutionally created board, see Okla. Const. art. VI, § 31a, with authority to supervise, manage and control Oklahoma State University. Okla.Stat. tit. 70, § 3412. Further, the Board is charged with organizing and conducting agricultural extension work under the direction of Oklahoma State University. Okla.Stat. tit. 70, § 3418. This mandate includes, among other things, the authority to receive federal monies and to comply with federal rules and regulations relating to such funds. Okla.Stat. tit. 70, § 3420. Among those regulations, as part of the Smith-Lever Act, is the obligation to account in writing for operations, expenditures, and receipts generated by the extension program. 7 U.S.C. § 345. That accounting is sent to the state governor and copied to the Secretary of Agriculture. Id. Failure to account properly for extension operations results in a withholding of federal funding. 7 U.S.C. § 346. Porter presents no evidence that this supervisory function has ever been neglected by the Board. Indeed, the record indicates that OSU has never failed to receive its funding under this program. Appellant's App. at 24. Thus, even if defendants were required to show active state supervision, that burden is easily met here.
 
 
 20
 The district court was thus correct in finding these defendants immune from antitrust liability under the state action doctrine. The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 *
 Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 In addition to the state statute mandating the provision of extension services by a nonprofit institution, OSU is required to comply with regulations from the United States Department of Agriculture limiting the charge for soil testing to only an amount sufficient to cover the incidental costs of the service. II Extension Serv., United States Dept. of Agric., Admin. Handbook, Cooperative Extension 3-22 (Sept. 1985), Supp.App. to Appellee's Brief at 12. Thus, the state statute and the USDA price-cap regulation require OSU to conduct soil testing at a price presumably below that which would be set by a free market. This statutory scheme obviates the need for a state controlled rate-making process which Porter contends is necessary before defendants will be entitled to the Parker exemption. In the face of these clear statutory pronouncements, Porter's argument regarding an as yet unadopted circular from the Office of Management and Budget purporting to reflect a federal policy to limit the type of anticompetitive activity at issue here is unpersuasive