HENRY, Circuit Judge,
concurring.
I concur in the majority decision, writing separately only to briefly note that though statute and precedent compel the above result, several scholars and judges, and perhaps even the ghost of Adam Smith, seem to warn that the policy behind our laws may need to be re-examined by appropriate local, state, and national legislative bodies.
Recent studies by Law and Economics scholars have questioned the wisdom of interfering with the marketplace under the state action exemption, set forth in Parker v. Brown, 317 U.S. 341, 350-52, 63 S.Ct. 307, 313-14, 87 L.Ed. 315 (1943), from national antitrust law. See generally William H. Page, Interest Groups, Antitrust, & State Regulation: Parker v. Brown in the Economic Theory of Legislation, 1987 Duke L.J. 618, 625 (1987) (noting that “state economic regulation is frequently in sharp conflict with [economic efficiency], largely because of the problem of rent seeking by interest groups”); John Shepard Wiley, Jr., A Capture Theory of Antitrust Federalism, 99 Harv. L.Rev. 713, 723 (1986). But cf. Merrick B. Garland, Antitrust & State Action: Economic Efficiency & the Political Process, 96 Yale L.J. 486, 519 (1987) (critiquing approaches of Law and Economics scholars). Though the state action exemption may be “grounded in principles of federalism,” a bedrock principle of our political system, it is certainly also true that “[t]he preservation of the free market and of a system of free enterprise without price fixing or cartels is essential to economic freedom.” F.T.C. v. Ticor Title Ins. Co., 504 U.S. 621, 632, 112 S.Ct. 2169, 2176, 119 L.Ed.2d 410 (1992).
Where the principles of federalism and the free market collide, great caution is warranted in the balance we strike. As Justice Kennedy observed for the majority in Ticor:
Federalism serves to assign political responsibility, not to obscure it. Neither federalism nor political responsibility is well served by a rule that essential national policies are displaced by state regulations intended to achieve more limited ends. For States which do choose to displace the free market with regulation, our insistence on real compliance with both parts of the [California Retail Liquor Dealers Ass’n v. ]Midcal [Aluminum, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980),] test will serve to make clear that the State is responsible for the price fixing it has sanctioned and undertaken to control.
Id at 636, 112 S.Ct. at 2178. Indeed, in Ticor, 36 states filed amici curiae briefs urging that broad application of the doctrine would not serve the states best interests. Id. at 635, 112 S.Ct. at 2178.
*1505 Certainly the market has been tinkered with before in order to provide such vital public services as airports. But one wonders why the car-renting consumer should have to pay for the facilities of those less efficient car rental companies who cannot compete with companies that can rent both facilities and automobiles competitively. Indeed, the small-desk car rental companies might as well have a desk as big as the companies that are trying harder since the hapless tourist is going to have to pay for it anyway. The litigation-spawning capabilities of state-sanctioned, anticompetitive bargains have been prophesied and questioned. See Frank E. Easterbrook, Foreword: The Court & the Economic System, 98 Harv. L.Rev. 4, 18 (1984) (“[A]ntieompetitive bargains embedded in state legislation will become targets for challenge under the antitrust laws; the deference due toward a statute that corrects ‘market failures’ is not due toward a statute that creates them.”).
As the majority opinion makes dear, the state action immunity doctrine once suggested two safeguards before allowing disruption of the market. First, a city or state must have clearly articulated and affirmatively expressed the state policy to supplant competition in this area. See City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978); Parker, 317 U.S. at 350-52, 63 S.Ct. at 313-14. With respect to this requirement, where private individuals or municipalities acted pursuant to state authorization, “[e]loser analysis [wa]s required.” Hoover v. Ronwin, 466 U.S. 558, 568, 104 S.Ct. 1989, 1995, 80 L.Ed.2d 590 (1984); Porter Testing Lab. v. Board of Regents, 993 F.2d 768, 770 (10th Cir.1993). (Here, a not so close analysis reveals that the city’s criterion seems to have included a clearly articulated agreement on the part of the rental companies to hold the city harmless in the event of a finding of anticompetitive activity. Aplt’s Reply Br. at 1-2.) Second, the policy had to be “actively supervised” by the state itself. Midcal, 445 U.S. at 105, 100 S.Ct. at 943.
This Midcal test remains the test for actions taken by states, but in Town of Hallie v. City of Eau Claire, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Court noted:
In Midcal, we stated that the active state supervision requirement was necessary to prevent a State from circumventing the Sherman Act’s proscriptions “by casting ... a gauzy cloak of state involvement over what is essentially a private price fixing arrangement.” 445 U.S., at 106 [100 S.Ct. at 943][sic]. Where a private party is engaging in the anticompetitive activity, there is a real danger that he is acting to further his own interest, rather than the governmental interests of the State. Where the actor is a municipality, there is little or no danger that it is involved in a private price-fixing arrangement. The only real danger is that it will seek to further purely parochial public interests at the expense of more overriding state goals. This danger is minimal, however, because of the requirement that the municipality act pursuant to a clearly articulated state policy. Once it is clear that state authorization exists, there is no need to require the State to supervise actively the municipality’s execution of what is a properly delegated function.
Id. at 46-47, 105 S.Ct. at 1720 (emphasis in original).
Given that Hallie does away with the active supervision prong for municipalities, we are left with an interference with competition based on the lobbying ability of those few who benefit from it. See John Cirace, An Economic Analysis of the “State-Municipal Action” Antitrust Cases, 61 Tex. L.Rev. 481, 488 (1982) (“The ‘clearly articulated and affirmatively expressed’ criterion involves the Court in the morass of legislative intent and makes the applicability of federal antitrust turn on whether the statute’s proponents had the ‘skill [or] influence to generate proper legislative history.’ ”) (quoting Cantor v. Detroit Edison Co., 428 U.S. 579, 610, 96 S.Ct. 3110, 3127, 49 L.Ed.2d 1141 (1976) (Black-mun, J., concurring)); see also Fisher v. City of Berkeley, 475 U.S. 260, 269, 106 S.Ct. 1045, 1050-51, 89 L.Ed.2d 206 (1986) (“There may be cases in which what appears to be a state- or municipality-administered price stabilization scheme is really a private price-fixing *1506 conspiracy, concealed under a ‘gauzy cloak of state involvement.’ This might occur even where prices are ostensibly under the absolute control of government officials.”) (quoting Midcal, 445 U.S. at 106, 100 S.Ct. at 943).
Professor Wiley suggests the state action doctrine be replaced with a doctrine that examines whether the market has been “captured” by a few players to the detriment of competition. 99 Harv. L.Rev. at 743. Though, like Justice Scalia, “I am skeptical about [ ] Parker v. Brown,” Ticor, 504 U.S. at 641, 112 S.Ct. at 2180 (Scalia, J., concurring), I believe that rending the veil of the gauzy cloak may not require the adoption of Professor Wiley’s intriguing model. Rather, we could insist that Midcal’s “clear articulation” be very clear, and that even in the case of municipalities, that there be active supervision (hopefully a bit more active than we have here), and that finally, we could require, a la Hoover, close analysis where private individuals are acting under state action immunity.
Noting our country’s well-placed fealty to the free market, the persuasive criticism of noted scholars and judges, and even statements like that in Ticor that “state-action immunity is disfavored, much as are repeals by implication,” 504 U.S. at 636, 112 S.Ct. at 2178, this doctrine has an amazing staying power. I am staying with it today because it is the law. As Judge Easterbrook observed, “Judges must be honest agents of the political branches. They carry out decisions they do not make.” 98 Harv. L.Rev. at 60. The ultimate resolution of this issue is properly left to either the Supreme Court, which could overrule Hallie and return to a test of greater scrutiny, or to the States and localities, which could reject these blandishments in honor of the invisible hand, or to Congress, which could fine-tune the Sherman Act. The obligation of this panel is to resolve the dispute before it, which the majority opinion correctly accomplished. But judges also have the opportunity if not the obligation to call attention to anomalous results. This seems to be one.