*376 BARBARA MILANO KEENAN,
Circuit Judge,
concurring:
I am pleased to concur in the majority’s opinion. I write separately to emphasize the narrow scope of our holding that the North Carolina State Board of Dental Examiners (the Board) is a private actor for purposes of the state action doctrine, and to discuss the practical implications of our decision.
Under the Supreme Court’s precedent, private parties are immune from the antitrust laws under the state action doctrine when two criteria are met. See Cal. Retail Liquor Dealers Ass’n v. Midcal Aluminum, Inc., 445 U.S. 97, 105, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980) (Midcal). First, the challenged restraint must be “clearly articulated and affirmatively expressed as state policy,” and, second, that policy must be “actively supervised” by the state itself. Id.
In this context, it is useful to state what our opinion does not hold. We do not hold that a state agency must always satisfy the active supervision prong of the standard set forth in Midcal to qualify for antitrust immunity under the state action doctrine. Nor do we hold that a state agency comprised, in whole or in part, of members participating in the market regulated by that state agency is a private actor subject to Midcal’s active supervision prong. Instead, our holding that the Board is a private actor for purposes of the state action doctrine turns on the fact that the members of the Board, who are market participants, are elected by other private participants in the market. See op. at 370 (“[Wjhen a state agency is operated by market participants who are elected by other market participants, it is a ‘private’ actor.”).
If the Board members here had been appointed or elected by state government officials pursuant to state statute, a much stronger case would have existed to remove the Board from the reach of Mid-cal’s active supervision prong.* See FTC v. Phoebe Putney Health System, Inc., — U.S. -, 133 S.Ct. 1003, 1010, 185 L.Ed.2d 43 (2013) (holding that municipal and certain “substate” entities of government receive immunity from antitrust scrutiny when they act pursuant to clearly articulated and affirmatively expressed state policy to displace competition, without regard to whether their activities are actively supervised by the state).
I further observe that subjecting the Board to Midcal’s active supervision prong does not impose an onerous burden on either the Board or the state. The Supreme Court explained that “the requirement of active state supervision serves essentially an evidentiary function: it is one way of ensuring that the actor is engaging in the challenged conduct pursuant to state policy.” Town of Hallie v. *377 City of Eau Claire, 471 U.S. 34, 46, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985) (emphasis added). Accordingly, if a state creates an agency and directs that the members of that agency be selected in a manner similar to the process employed here, the agency may still enjoy antitrust immunity if, for example, the state “monitor[s] market conditions or engage[s] in [a] ‘pointed reexamination’ ” of the agency’s actions, Midcal, 445 U.S. at 106, 100 S.Ct. 937, or if the agency’s actions have been authorized by the state’s judiciary or are subject to judicial enforcement proceedings, Bates v. State Bar of Arizona, 433 U.S. 350, 361—62, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).
In this case, I do not doubt that the Board was motivated substantially by a desire to eliminate an unsafe medical practice, namely, the performance of teeth whitening services by unqualified individuals under unsanitary conditions. The Board was aware that several consumers had suffered from adverse side effects, including bleeding or “chemically burned” gums, after receiving teeth-whitening services from persons not licensed to practice dentistry. Additionally, the Board was aware that many of the “mall kiosks” where such teeth-whitening services are performed lack access to running water. The Board also received reports that non-licensed persons performed teeth-whitening services without using gloves or masks, thereby increasing the risk of adverse side effects. Accordingly, in my view, the record supports the Board’s argument that there is a safety risk inherent in allowing certain individuals who are not licensed dentists, particularly mall-kiosk employees, to perform teeth-whitening services.
North Carolina is entitled to make the legislative judgment that the benefits of prohibiting non-dentists from performing dental services related to stain removal outweigh the harm to competition that results from excluding non-dentists from that market. That kind of legislative judgment exemplifies the very basis of the state action immunity doctrine. However, because “state-action immunity is disfavored,” Phoebe Putney, 133 S.Ct. at 1010, when the state makes such a judgment, the state must act as the state itself rather than through private actors only loosely affiliated with the state.
Here, the fact that the Board is comprised of private dentists elected by other private dentists, along with North Carolina’s lack of active supervision of the Board’s activities, leaves us with little confidence that the state itself, rather than a private consortium of dentists, chose to regulate dental health in this manner at the expense of robust competition for teeth whitening services. Accordingly, the Board’s actions are those of a private actor and are not immune from the antitrust laws under the state action doctrine. With these observations, I am pleased to join the majority opinion.

The separate features supporting the Board's position included: (1) the North Carolina legislature's designation of the Board "as the agency of the State for the regulation of the practice of dentistry in this State,” N.C.G.S. § 90-22(b); (2) the designation of Board members as "State employees,” N.C.G.S. § 93B—16(b); (3) the Board members' entitlement to sovereign immunity and legal defense by the state attorney general, N.C.G.S. §§ 93B-16(c), 143-300.3; (4) the oath Board members are required to take promising to uphold North Carolina's laws and protect the health, safety, and welfare of the public, N.C. CONST, art. VI, § 7; (5) the potential that Board members may be punished by the North Carolina Ethics Commission if the members act in a manner that presents a conflict of interest, N.C.G.S. §§ 138A-10, 12(o); and (6) the review powers over the Board enjoyed by the North Carolina Joint Legislative Commission on Governmental Operations, which has the power to study state agency activities regarding "conformity with legislative intent,” N.C.G.S. § 120-76(l)(d).